[Civ. No. 17055. First Dist., Div. One. Mar. 11, 1957.]

Estate of EDGAR LAURENCE DOW, Deceased. MAXINE PATRICIA HUTCHINSON, Appellant, v. MAXINE B. DOW, Individually and as Administratrix With the Will Annexed, etc., Respondent.

William A. White and Hutchinson & Quattrin for Appellant.

J. Oscar Goldstein, P. M. Barceloux, Burton J. Goldstein, Goldstein, Barceloux & Goldstein and Joseph L. Alioto for Respondent.

BRAY, J.—Appellant has taken two appeals: (1) from certain portions of the decree of settlement of the third and the fourth and final accounts of respondent and of final distribution; (2) from certain portions of the order denying her petition for partial distribution.[1]

### QUESTIONS PRESENTED[2]

*First Appeal.*

1. Did respondent, widow of the decedent, violate the no-contest clause of the will?

2. Alleged jurisdictional defects: (a) jury trial; (b) findings.

3. Had the "Sutro" judgment outlawed?

---

[1]This, and two companion appeals this day decided by this court, are additional proceedings in the long and acrimonious litigation between appellant and respondent, respectively the daughter and the widow of the decedent. For the history of the estate and the litigation see *Estate of Dow* (1949), 91 Cal.App.2d 420 [205 P.2d 698]; *Estate of Dow* (1953), 120 Cal.App.2d 296 [260 P.2d 970]; *Dow* v. *Superior Court* (1956), 140 Cal.App.2d 399 [297 P.2d 30]; and *Estate of Dow,* (Cal. App.) 305 P.2d 205 (December, 1956), modified (Cal.App.) (1957), hearing granted by Supreme Court on February 13, 1957.

[2]No good reason being shown therefor, appellant's request in her closing brief that this court strike certain pages from respondent Mrs. Dow's brief is denied.

4. Error in commissions and fees.

5. Alleged inadequacy of fees to appellant's attorney.

6. The final account generally.

*Second Appeal.*

Did the pendency of a proceeding to determine that Mrs. Dow had forfeited her interest in the estate justify denial of partial distribution to appellant?

1. *No-Contest.*

The will bequeathed to respondent wife certain personal property, and to testator's two sons by a former marriage certain articles of personal ornament. "And I further declare that any and all securities or property that I have given or may give prior to my death to my wife or any one of my children evidenced by a transfer of such securities or property shall be conclusive evidence of their ownership, and shall not be considered a part of the Trust hereinafter created.

"FOURTH: I herewith and hereby declare that all other property of every kind and character, and all the estate whereof I die possessed is separate property accumulated, owned and possessed by me prior to my present marriage, or is the increase, profits and accumulations that have been directly derived from such property, and the increase in value of securities owned by me or from the investment or reinvestment of my separate funds or property owned or possessed prior to my said marriage."

It then states that since his marriage his only income other than that derived from his separate property has been his salary of $12,000 as president of River Farms Company of California and that the living expenses of himself and family have averaged approximately $25,000 per year. Testator devises and bequeaths to a trustee all of his estate of every description wherever situated "and however held which is or may be subject to my testamentary disposition at the time of my death" (excepting the personal property bequests above mentioned). The will sets forth the power of the trustee and the terms of the trust, primarily that the income shall be used for the joint support and benefit of appellant and respondent, with a provision that his two sons would participate if the income exceeds a certain amount annually. So far as concerns the questions here, the trust was to terminate on January 1, 1952, at which time the trust estate was to go one-third to appellant, one-third to respondent and one-sixth to each of the two sons. The no-contest clause (paragraph twenty-first)

reads in part as follows: "I hereby declare, and it is my will, that if any of the beneficiaries herein named shall contest or question this my will or cause it to be contested or questioned in any court then, and in such event, I hereby revoke any devise or bequest herein made to such beneficiary or beneficiaries, and such beneficiary or beneficiaries" shall receive the sum of $1.00 each. There were many other provisions in the will, which was a lengthy one. They will be referred to hereafter if material to the questions presented.

There are three acts of respondent which appellant contends violated this clause and constituted an election to take community or other statutory rights in lieu of the benefits of the will. 1. *The so-called "community property" action (Dow v. Dow, No. 233370,* San Francisco Superior Court). Mrs. Dow in 1932 sued the executor of the Dow estate, Edgar L. Dow, Jr., Marian F. Dow, his wife, Gerald H. Dow, and American Trust Company, claiming that the gifts to the sons, to Marian and to American Trust Company in trust for the sons, made prior to testator's death, and all of the property in the estate, were community property of herself and the decedent, to one-half of which plaintiff was entitled. The administrator of the estate[3] and Edgar filed answers, claiming that all of the property mentioned in the complaint was separate property of the decedent. The administrator alleged that it belonged to the estate. Edgar alleged that all such property as well as stocks and bonds in Edgar's name and in Sutro and Company and 3,093 shares of River Farms Company of California stock, had been assigned by decedent to Edgar in trust, subject to an assignment thereof from Edgar to decedent to be used only in the event Edgar predeceased his father.[4] November 16, 1935, Mrs. Dow, Edgar and the administrator entered into a compromise agreement.[5] This agreement provided that (1) the Mayflower Mine be conveyed by Edgar to a trustee for the benefit in equal shares of Mrs. Dow, Edgar and the estate. (2) All parties release Edgar's trust. (3) A bank account resulting from a securities account in Edgar's name was released to the administrator. (4) The 3,093 shares of River Farms stock was divided between Edgar

[3]The executor had resigned.

[4]The executor had instituted a prior action (not completed) against Edgar seeking recapture for the estate of practically the same property.

[5]Gerald, who had filed an answer which was practically a general denial, was not a named party to this agreement. However, he signed it "Approved—Gerald H. Dow."

and the administrator. (5) Other properties listed in the assignment were released to Edgar. (6) Edgar assign and cause Gerald to assign their interests in the estate to Mrs. Dow and appellant. (7) Judgment in the action to provide accordingly. The agreement further provided: "Said first party, Maxine B. Dow, shall have the right to participate in the distribution of the Estate of Edgar L. Dow, deceased, in accord with the terms of the will of said deceased, and no objection of any kind shall be made to such participation." Mrs. Dow agreed that she had no community interest in any of the assets or property of the estate and that all constituted decedent's separate property. The probate court granted the administrator permission to execute the agreement, also providing "That Maxine B. Dow relinquish to the estate all claims to property therein on the ground that it is community property of her and the decedent herein and recognize that the same is the separate property of the decedent." Judgment was entered in *Dow* v. *Dow* in accordance with the agreement.[6]

2. March 2 and May 25, 1931, respectively, Mrs. Dow commenced actions against the administrator, referred to as the *"Sutro actions."* Both actions were based upon the same transaction and alleged facts. The first (San Francisco No. 226192) was for the return of securities formerly in an account with Sutro and Company in Mrs. Dow's name. This action was never brought to trial, and in the decree of distribution herein the court found that because of the time element of more than 20 years, that action was "aborted" and could not be "considered for any purpose." The second action (San Francisco No. 228219) was to enforce a claim against the estate for the conversion of said securities by testator. Judgment in favor of Mrs. Dow and against the estate for $12,822.32 plus interest was rendered.

3. *Family allowance proceedings.* Originally the estate was insolvent. A preinventory family allowance was granted, terminating December, 1931. By April 30, 1947, however, the estate had become solvent. On that day Mrs. Dow applied for a family allowance in the sum of $1,000 per month retroactive to December, 1931. Had the allowance been granted in the sum requested it would have amounted to considerably more than the then value of the estate. The court granted an allowance of $500 per month restricted to six months beginning July 1, 1947. No appeal followed. May

[6]Subsequently appellant unsuccessfully brought an action against Mrs. Dow to set aside the compromise agreement and the judgment.

13, 1948, on petition therefor, Mrs. Dow was granted a family allowance of $500 per month commencing January 1, 1948, and continuing until the further order of the court. Appellant appealed (91 Cal.App.2d 420 [205 P.2d 698].) The order was affirmed. In 1953 appellant applied to the probate court for a termination of this allowance. She appealed from the order denying termination. (120 Cal.App.2d 296 [260 P.2d 970].) The reviewing court ordered the allowance terminated as of the date the motion to terminate was made. On October 5, and on November 30, 1953, Mrs. Dow applied for further family allowances. Both applications were denied. The total amount received in family allowances by Mrs. Dow is $38,500.

The probate court expressly and independently found that the legal actions above mentioned were not in any way contests or actions contemplated under paragraphs twenty-first of the will nor did they violate its terms, and that Mrs. Dow is entitled to inherit under the will. The court found that the "community property action" resulted in "three outstanding matters which clearly benefited" appellant and the estate: (a) the estate became owner of an additional 1,526½ shares of River Farms having a book value of $75 per share; (b) the estate became the owner of a one-third interest in the Mayflower Mine, of the present value of $10,000; and (c) that Edgar and Gerald assigned to appellant and Mrs. Dow their right to a one-third share of the entire estate, and that neither of the sons has now any claim in the estate. The probate court found that the matter of family allowance being a statutory right, Mrs. Dow, by her various petitions for family allowance, had not violated paragraph twenty-first of the will.

While a testator is free to dispose of his property on whatever condition he wishes to impose so long as the condition is not prohibited by law or contrary to public policy, and a provision in a will providing for forfeiture of a legacy or devise in the event of a contest of the will by a legatee or devisee is binding, and an *in terrorem* provision in a will is not against public policy and must be enforced as written, such a clause is to be strictly construed. (*Estate of Fuller,* 143 Cal.App.2d 820, 823 [300 P.2d 342].) "Whether there has been a contest within the meaning of the language used in a will is to be determined according to the circumstances in each case." (P. 824.) It is rather interesting that in *Estate of Dow, supra,* 91 Cal.App.2d 420, appellant made the

contention that by the compromise agreement in the "community property" action Mrs. Dow had waived all rights except the right to receive under the will and contended that therefore she was not entitled to a family allowance. Appellant now claims that Mrs. Dow has no right to receive under the will. The court there held to the contrary of the contention. (P. 426.) It should be remembered that while Mrs. Dow contended that all the property of the decedent was community property she did not pursue the contention far enough to get a court determination but waived the contention and as a result of her action obtained considerable assets for the estate as well as for appellant. The "community property" action, while differing somewhat in form, was, in effect (particularly in view of the compromise effected) an action for declaratory relief similar to *Colden* v. *Costello,* 50 Cal.App. 2d 363 [122 P.2d 959], where the widow brought an action in declaratory relief to determine whether her husband's estate was separate or community property. As said in the decree of distribution in our case, "an examination of all of the pleadings, the agreement entered into by the plaintiff, defendants, and intervenors, and the Findings and Judgment as entered in that case, fails to indicate that said action was anything other than an effort by said MAXINE B. Dow, widow of the deceased, to enhance the assets of said Estate, by moneys and property, which she claimed actually belonged to the deceased but which was in the hands of EDGAR L. Dow, JR., et al., without consideration; . . ." While the Colden case held in effect that such an action should be brought in the probate court, it definitely held (p. 373) that "applications to the court in such connection, and the offering of proof to show that all, any or no part of the estate is community property, will not violate" an *in terrorem* provision of a will which the court characterized as (p. 365) "a comprehensive 'disinheriting' provision" in case of contest or opposition to the plan of the will. Mrs. Dow's action brought back into the estate property which Edgar was claiming as his own.

In the "Sutro" case the court found that testator had converted to his own use certain stock which was Mrs. Dow's separate property. It then gave judgment against the estate for the value of that stock, $12,822.32 with interest "payable in due course of administration," a situation similar to that in *Estate of Madansky,* 29 Cal.App.2d 685 [85 P.2d 576], where there was an *in terrorem* clause much more compre-

hensive than in our case. The court there held that the assertion of a creditor's claim against the estate by the son legatee, even though the assertion was unsuccessful and the claim was disallowed, in nowise violated the forfeiture clause. It "is not equivalent to contesting the will of decedent . . ." (P. 686.)

Appellant contends that by Mrs. Dow's conduct in applying for and receiving family allowances she thereby elected to stand on her rights outside the will rather than take through it. Appellant has cited no authority for the contention that obtaining a family allowance places a widow in such position, nor that such action violates the no-contest clause of the will, the second contention made by appellant concerning the family allowances. However, it is appellant's contention that the allowances here were not the ordinary and customary ones in an estate, but were sought and obtained by Mrs. Dow fraudulently and for the purpose of circumventing the will. This contention was made and answered adversely to appellant in *Estate of Dow, supra,* 91 Cal.App.2d 420, 428.[7]

The situation in *Savings Bank* v. *Schell,* 142 Cal. 505, 509-510 [76 P. 250], is not comparable to the one here. There the court found that the widow executrix fraudulently planned by means of a family allowance to deprive a mortgagee of the amount of his mortgage. The findings of the probate court as well as the reviewing court in 91 Cal.App.2d 420, *supra,* disclaim any ulterior motive of the widow here.

Thus, the courts having held that the widow was properly and fairly entitled to the allowances, the sole question is whether Mrs. Dow thereby barred herself from participating under the will. On this question we have no doubt that she did not. There is no language in the will which would indicate that the testator intended that in any way she be denied this statutory right. Therefore Mrs. Dow was in no way *contesting* or *questioning* the provisions of the will. (See *Estate of Boyd,* 95 Cal.App.2d 44, 46 [212 P.2d 17].)

There are a number of cases in California in which appellant claims that actions somewhat similar to those taken by Mrs. Dow were held to constitute a violation of the *in terrorem* clause of the particular will. However, they can be easily distinguished from our case, either in the terms of

---

[7]In *Estate of Dow, supra,* 120 Cal.App.2d 296, the family allowance then under consideration was impliedly upheld even though the reviewing court ordered it terminated.

the particular clause or the circumstances of the particular case. In *In re Kitchen,* 192 Cal. 384 [220 P. 301, 30 A.L.R. 1008], a niece legatee presented a claim against the estate upon a claimed oral contract with the testator to perform the duties of a daughter to the decedent. The *in terrorem* clause was very comprehensive, inhibiting the commencement of suit in any court or to sue or "disturb" the executor by any ways or means. In *Estate of Howard,* 68 Cal.App.2d 9 [155 P.2d 841], the husband resisted an action against him by the executors of the wife's estate to quiet title to property as her separate estate. The *in terrorem* clause in the will was even broader than that in the Kitchen case. Among other matters it inhibited a legatee from being a party to any pleading or proceeding which would draw in question the operation of any of the provisions of the will or in any way question testatrix' acts in making the will or any of its provisions. In *Estate of Mathie,* 64 Cal.App.2d 767 [149 P.2d 485], it was held that the husband's acts in destroying his wife's will and petitioning for letters of administration, then petitioning for probate of a will prior to the one he destroyed, and petitioning for a probate homestead alleging in bad faith that the property was community property, constituted a contest of the destroyed will, thereby invoking an *in terrorem* clause therein. In our case, the court expressly held that Mrs. Dow's claims that the estate was community property were made in good faith. Significant in this connection is the statement of the then administrator with the will annexed of the Dow estate in the petition asking authority to compromise the "community property" action—"That your petitioner is well acquainted with the facts and circumstances in connection with the property concerned in the litigation; that your petitioner feels that it would be difficult to prove that the said property was the separate property of the said decedent."

In *Estate of Seipel,* 130 Cal.App. 273 [19 P.2d 808], a daughter brought two actions against the executrices of a will containing a strong *in terrorem* clause. The first was for an accounting by them of certain shares of stock and bank deposits, and transferred to them by testatrix in her lifetime. (This action was dismissed.) The second alleged fraud of the executrices by which they possessed themselves of the stock money. It demanded that such be inventoried as assets of the estate. The executrices won out. It was held that bringing these actions did not constitute a contest of the will,

a failure to abide by the provisions of the will, or a violation of the *in terrorem* clause.[8]

2. *Jurisdiction.* (a) Jury trial.

■ The probate court properly denied appellant's demand for a jury trial in the heirship proceedings, as there were no questions of fact to be determined. The interpretation of the no-contest clause of the will, the determination of what appellant refers to as the "inherent issue of fact of the testator's intention" and whether Mrs. Dow had violated it by bringing the proceedings above mentioned, were questions of law for the court, as there was no dispute over the fact that she had brought such proceedings. Court records so showed. Her motives in bringing the "community property" and the "Sutro" actions could not be a basis for a dispute of fact as she was well within her rights in so doing. Moreover, that she did not act in bad faith was determined in *Hutchinson* v. *Dow* (San Francisco, No. 378558),[9] where appellant attempted to set aside the judgment in the community property action and to impress the testamentary trust on all property received by Mrs. Dow on the ground of her fraud and bad faith. Practically every point raised by appellant here in her contention that Mrs. Dow violated the no-contest clause was raised in that case and decided adversely to appellant's contentions. Likewise her motives in obtaining the family allowances have also heretofore been determined to be proper. The conflict in the testimony of appellant and that of Mrs. Dow as to the latter's motives in the allowance matter was determined in *Estate of Dow, supra,* 91 Cal.App.2d at page 428: "Appellant contended below that the administratrix was purposely delaying the administration of the estate in order to mulct it by a prolonged family allowance, and by increasing interest on her claims against the estate. Appellant testified that Mrs. Dow had told her she would do so. Mrs. Dow denied making such statement. All these matters were before the court and apparently the court did not believe that such was the purpose of the administratrix."

[8]Appellant contends that the type of answer filed by Mrs. Dow to appellant's "Answer to Petition for Partial Distribution of Maxine B. Dow and Petition for an Order Determining the Persons Entitled to Distribution of the Above Entitled Estate" constituted an admission of the affirmative allegation of the answer. It was not so treated by the paries in the probate court. No one had any doubt but that Mrs. Dow was not admitting those allegations.

[9]Notice of appeal from the judgment therein was filed January 30, 1951. The appeal has never been perfected.

(b) *Findings.*

Appellant contends that there are no findings on the issue raised in the heirship proceedings as to whether Mrs. Dow had violated the no-contest clause of the will, in spite of the fact that in the decree of distribution the court expressly found that none of the proceedings taken by Mrs. Dow violated that clause. Apparently appellant means that the court did not correctly find on that issue. This contention is not well founded.

3. *The "Sutro" Judgment.*

The decree ordered that Mrs. Dow be credited with the amount of the "Sutro" judgment and interest heretofore mentioned. Appellant contends this judgment had outlawed and was uncollectible because no transcript of the judgment was filed in the estate. ██ The judgment "payable in due course of administration" was obtained October 29, 1935. June 2, 1947, a certified photostatic copy of it was filed in the estate file. A certified transcript was not filed until 1950. At the date of the judgment section 730, Probate Code, provided that a judgment against an estate on a claim for money "conclusively establishes the validity of the claim for the amount of the judgment" and that "A certified transcript of the original docket of the judgment must be filed in the administration proceedings. No execution shall issue upon the judgment, nor shall it create any lien upon the property of the estate, or give the judgment creditor any priority of payment."[10] We do not believe that the failure originally to comply with section 730 either invalidated the judgment or caused it to outlaw. The section obviously is to protect the executor or administrator of an estate, the creditors and other interested persons, from judgments which are unknown at the time the estate, by payment of claims, distribution or otherwise, disposes of property which would have been applied to the judgment were its existence made known. Here, although no transcript of the judgment was filed for many years, everyone connected with or interested in the estate knew of the judgment's existence. In the fourth accounting of administration filed by Hiram W. Johnson, Jr., as administrator *de bonis non* with the will annexed, filed in 1936, the fact of the judgment having been obtained against the estate is reported and the statement made that it had not been satisfied in whole or in part. This accounting was ap-

---

[10]In 1945 the section was amended to permit the filing of an abstract of the judgment if there was no original docket of the judgment.

proved by the court. In *Estate of Dow, supra,* 91 Cal.App. 2d 420, the judgment is referred to, and the amount then due thereunder given. It is referred to as one of Mrs. Dow's claims against the estate. In 1948 appellant unsuccessfully brought an action against Mrs. Dow individually and as administratrix (San Francisco No. 378558) to, among other things, set aside this judgment on account of alleged fraud. In *Estate of Dow, supra,* 120 Cal.App.2d 296, 297, the court states that Mrs. Dow is "the owner of a claim," being the judgment in question, and ordered that "all claims" be paid within six months from the date of the remittitur. (P. 311.)[11] December 8, 1952, the probate court, after a hearing of appellant's petition for an accounting, termination of family allowance and for other relief, rendered a judgment, a portion of which provided that interest on the "Sutro" judgment and Mrs. Dow's claim thereon be disallowed for periods subsequent to October 16, 1952. Appellant appealed from the probate court's judgment except as to that portion dealing with interest. In effect, the probate court's action was a determination that Mrs. Dow's claim against the estate on the judgment was a valid one and that she was entitled to interest thereon up to October 16, 1952. On December 2, 1953, appellant petitioned the probate court to instruct the administratrix to pay "all interest asserted accrued upon a claim, or judgment, asserted by said Maxine B. Dow in her individual capacity . . ."

█ Appellant's contention that unless section 730 is complied with prior to the expiration of five years from the date of the judgment the latter outlaws, is without merit. █ Even a civil judgment does not outlaw in five years. Section 685, Code of Civil Procedure, which appellant cites as authority for her proposition, allows a civil judgment to be enforced after five years. A judgment against an estate is only payable in due course of administration (execution may not issue on it; it does not create a lien upon property of the estate nor give the judgment creditor any priority of payment (Prob. Code, § 730)). █ The judgment must await the administration of the estate. █ Its right to be paid in due course of administration exists until it is paid or the court determines that there are no assets from which it may be paid. In *Bank of America* v. *Katz,* 45 Cal.App.2d 138

---

[11]It is interesting to note that in that proceeding appellant was insisting that this claim should have long since been paid. She is now equally insistent that it not be paid.

[113 P.2d 759], it was held that the probate court had power under section 685, Code of Civil Procedure, to grant leave to enforce against the estate of a judgment debtor a money judgment obtained against him more than five years prior to death, by the presentation of a claim against his estate and by bringing an action thereon if the claim is rejected. It would be an idle and unnecessary act to require a creditor holding a judgment against an estate, which judgment can only be paid in course of administration, to petition the probate court before the expiration of a five year period to reallow his claim which section 730, Probate Code, says his judgment has conclusively established. The action of the probate court in approving the Johnson fourth account, the recognition of the judgment against the estate in *Estate of Dow, supra,* 91 Cal.App.2d 420, the order in *Estate of Dow, supra,* 120 Cal.App.2d 296, 300, and the order in the decree of distribution requiring payment of the judgment, would, if such action were necessary, constitute the recognition of the claim discussed in the Katz case, *supra.*

4. *Commissions and Fees.*

The decree allows Mrs. Dow's statutory commissions in the sum of $2,058.14. She had received $1,500 in 1946, making her total commissions $3,558.14. Appellant contends that included in the base of estate assets upon which these commissions and the attorney's commissions in equal amount were figured was a sum of $186,324.99 gross value of a hypothecated partnership interest, which after liquidation by the surviving partner netted the estate only $10,000. All parties concede that only the latter sum could be considered. An examination of the record demonstrates that appellant is in error. The commissions were based only upon moneys accounted for and the valuation of the River Farms stock and the Mayflower Mine.

Appellant's contention that the commissions allowed Mrs. Dow fail by $294.90 to credit prorated commissions theretofore paid her predecessors is correct, and the amount payable to her should be reduced accordingly.

 The valuation of the River Farms stock upon which the commissions were based is $45 per share. Appellant's contention that the evidence does not support that valuation is not well founded. The mere fact that the offer to purchase at that price was for only 1,000 shares, does not determine that the balance of the stock in view of all the other evidence upon the subject is not worth an equal amount per share.

See *Dow* v. *Superior Court, supra,* 140 Cal.App.2d 399, 406, stating that the trial court found that the River Farms stock was "readily salable" at not less than $45 per share.

The court allowed Mrs. Dow $5,000 finding that during her administration of the estate she had "performed further extraordinary services, consisting of many vital problems in connection with said Estate, covering a period of over seventeen (17) years . . ." " 'The allowance of extraordinary fees is a matter of discretion with the trial court and is not to be interfered with on appeal except for abuse. Such discretion not only invests the trial court with the power to determine whether the character of the services is such as to warrant extra compensation, but to determine the amount.' (*Estate of Scherer,* 58 Cal.App.2d 133, 142 [136 P.2d 103].)" (*Estate of Raphael,* 128 Cal.App.2d 92, 98-99 [274 P.2d 880].)

One item of Mrs. Dow's services we pointed out in *Estate of Dow, supra,* 91 Cal.App.2d 420, 425: "In 1946, Mrs. Dow succeeded in settling claims against the estate amounting to around $18,000 for a sum of around $4,000." The probate court knew, too, the entire history of the estate and the contentions of appellant. (See *Estate of Raphael, supra,* 128 Cal.App.2d at p. 99 for effect of such knowledge.) Without detailing the services rendered (Mrs. Dow's testimony covered many pages of transcript, most of which detailed her services) we think the record fails to disclose that the court abused its discretion in making this allowance.

■■■ The court allowed the administratrix' present attorneys $2,500 for extraordinary services since their appointment in December, 1953. This raises a very serious question. In the listing of these services made by the late J. Oscar Goldstein it appears that most of the services rendered were for Mrs. Dow personally and not for the estate. His services as detailed seem to fall into three categories: (1) Services rendered for Mrs. Dow personally. In this category are the following which he conceded at the hearing did not entitle him to fees from the estate: his appearance in the family allowance matters and his appearance on a petition of appellant for instructions to the administrator. His conferences with appellant's attorneys were, as he stated, for the purpose of trying to effect a compromise or settlement in the bitter warfare between mother and daughter. (2) Services which were primarily for Mrs. Dow's interests with possibly a *pro forma* appearance on behalf of the estate. These were appearances in opposition to appellant's petition for partial distribution

and to appellant's petition for heirship. (3) Services directly for the estate's benefit. Such services as preparing the order of sale of 200 shares of stock, the proceedings for which had been initiated before his connection with the estate, an estate income tax matter, his appearance for the administratrix on the acutely contested hearings on appellant's opposition to many of the items of the final account, and some other matters. Unfortunately no segregation was made by the witness and the probate court made a lump sum allowance. We have no way of knowing what portions thereof were allocable to proper charges against the estate. We have two alternatives: (1) We can reverse the portion of the decree making the allowance and instruct the probate court to redetermine the matter (*Estate of Buchman*, 138 Cal.App.2d 228, 237 [291 P.2d 547]); or (2) under the inherent power of this court to modify a judgment where "justice between the parties may be accomplished by a modification thereof" (*Schnierow* v. *Boutagy*, 33 Cal.App. 336, 337 [164 P. 1132])[12] we can modify the decree. In view of the past history of this estate it would appear that justice between the parties requires that if possible we make a final determination of all matters raised on this appeal. Were we to refer the matter back to the trial court, it is reasonable to assume from the history of this estate that the trial court's determination would not be permitted to be final, and therefore we feel that we should now determine the matter. The evidence of the services rendered by the attorneys is before us. As judges we have a fair understanding of the value of attorneys' services.[13] Based upon the record we determine that a reasonable compensation for the extraordinary services rendered the estate by Goldstein, Barceloux and Goldstein, as shown by the record, is the sum of $1,000.

### 5. *Inadequacy of Fees Allowed Appellant's Attorney.*

The court allowed Mr. White $500 for his services, $250 characterized as ordinary services and $250 as extraordinary

---

[12]See 5 C.J.S. § 1883, p. 1370; 4 Cal.Jur.2d, § 662, p. 546.

[13]See *Peyre* v. *Peyre*, 79 Cal. 336, 339-340 [21 P. 838]: " 'The court could determine from its own experience, and from the facts and circumstances of the case, as they appeared to it from the pleadings and other papers and proceedings, what was a reasonable fee.' (*DeLlamosas* v. *Llamosas*, 62 N.Y. 618; *Estate of Dorland*, 63 Cal. [281] 282.)" That statement concerning the power of the trial court applies equally to that of this court.

services.[14] These fees were allowed under the principle that although he represented appellant in the proceedings which he brought, those proceedings resulted in increasing or preserving the assets of the estate and under the rule set forth in *Estate of Reade*, 31 Cal.2d 669, 672 [191 P.2d 745], the court may make an allowance for legal services which have redounded to the benefit of the estate. The services claimed to have been rendered were (1) opposing the retroactive family allowance, (2) presenting the proceedings and appeal which terminated the family allowance retroactively for 15 months and prospectively for 19 months, (3) successfully opposing the fourth and fifth applications for further allowances, and (4) seeking an accounting and opposing "exorbitant demands in the instant hearings." While undoubtedly Mr. White's services were worth much more than the amount allowed, it must be remembered that half of all moneys saved to the estate goes to Mrs. Dow. She should not be required to pay for those moneys which, in effect, she merely transfers from one pocket to another. The other half goes to Mr. White's own client who should pay for his services. ▮▮▮ The reason for the rule in *Estate of Reade, supra*, 31 Cal.2d at page 672, is "to compel those for whose benefit the action or proceeding was taken to bear their share of the expenses of the litigation . . ." Under the circumstances here we cannot say that the court abused its discretion in not granting Mr. White a larger fee from the estate.

6. *The Final Account.*

Appellant contends that this is not a final account because although the decree was rendered February 2, 1955, the account itself records no receipt later than December 31, 1953, and, contends appellant, there have been receipts and disbursements later than those dates. Whether the account is a final one in the true sense is immaterial. Everyone concedes that the estate is in condition to be, and should be, distributed. Upon the termination of this appeal, the administratrix will immediately abide by the terms of the decree of distribution except as modified hereby. A supplemental account will necessarily have to be filed, dealing with fiscal matters subsequent to the ones last accounted for. If there are not

---

[14]As Mr. White, at no time, was an attorney for the estate, it is not clear on what basis fees for "ordinary services" and "extraordinary services" which usually refer to services of an attorney for the estate, were allowed him. However, the names given the services are not important.

moneys on hand sufficient to pay the claims and charges allowed in the decree, taxes, closing expenses, etc., sufficient stock will have to be sold to do so. The administratrix should immediately determine this question and withhold only such stock, if any, as may be necessary for that purpose and distribute the balance as provided in the decree, half to herself and half to appellant. There is no reason for any delay in this respect.

SECOND APPEAL

Appellant petitioned the probate court for a partial distribution to her of 2,000 of the 4,958½ shares of River Farms Company stock belonging to the estate, as well as for other relief. Mrs. Dow answered, asking for partial distribution to her and appellant of 1,000 shares each. She then filed a supplemental answer denying appellant's right to any share in the estate because of alleged violation by appellant of the no-contest clause of decedent's will. After a hearing, the court found against Mrs. Dow's charges that appellant had violated the provisions of the will but refused partial distribution to either party. Appellant appeals from those portions of the order which denied her distribution of 2,000 shares "and, in the alternative, one thousand (1,000) shares" of River Farms stock. At the time of the hearing there was then pending a petition by appellant to determine the persons entitled to distribution of the estate, the main purpose of which petition was to have determined appellant's contention that Mrs. Dow had violated the no-contest clause of the will. The sole question here is whether the pendency of that proceeding required the denial of appellant's petition for partial distribution.

*Findings.*

The court found "That the condition of said estate is such that partial distribution of two thousand (2,000) shares of the capital stock of River Farms Company of California . . . may be had without injury to any person interested in said estate, provided, however, that said shares were distributed equally and between petitioner and said administratrix," but denied partial distribution for the reason "That the proceedings upon . . . petition for an order determining the persons entitled to distribution of the above-entitled estate . . . cannot be immediately heard, concluded and determined, and the pendence of said proceedings prevents any partial distribution to Maxine B. Dow as a legatee under said

will, or otherwise, at this time and until the determination of the issues presented . . . for this reason, and not otherwise, the Court deems it improper to order partial distribution of any asset of said estate to petitioner herein at this date."

*Partial Distribution.*

 Inasmuch as the court found that distribution of 2,000 shares could have been had without injury to the estate, and that "the assets of said estate remaining in the custody of said administratrix after distribution of said two thousand (2,000) shares of said stock, if had equally between petitioner and said administratrix, are sufficient to satisfy all claims, demands, family allowances and costs of administration heretofore incurred or necessarily to be incurred in the future pending the closing of said administration and, after satisfaction of the same, to satisfy any and all legacies, if any, to which said Maxine B. Dow shall be entitled under said will," the court should have distributed 1,000 shares to appellant. (See *Estate of Stephenson,* 65 Cal.App.2d 120, 123, 124 [150 P.2d 222].) Under the will and the assignments, the entire estate is to be divided between appellant and Mrs. Dow. If Mrs. Dow had forfeited her right to share in the estate that share would have gone to appellant. Under any situation appellant was entitled to such portion of her half of the estate as could safely be distributed regardless of what happened to Mrs. Dow's half. Appellant was entitled to a partial distribution of such portion of her interest as could be distributed without injury to the estate itself or persons interested in it. (See *Estate of Ross,* 180 Cal. 643, 648 [182 P. 755], and *Estate of Stephenson, supra,* .65 Cal.App.2d 120, 124.) The court found that distribution to her of 1,000 shares would not have caused such injury. Therefore it should have been made. The court felt and the record shows that a distribution to her of 2,000 shares might have left the estate in such situation that, if Mrs. Dow had not forfeited her interest, that interest might be required to bear more than its fair share of the debts and charges of the estate. However, such fact would not justify the refusal of 1,000 shares to appellant, as the condition of the estate as well as the court's findings show the distribution of that number of shares could safely be made.

 As we are herein affirming the decree of distribution, and therefore both appellant and Mrs. Dow are immediately

entitled to their distributive shares therein, less only such assets as are necessary to meet charges accruing subsequently to those approved in the decree of distribution, has the denial of partial distribution become moot? We believe it has. Appellant receives by the decree of distribution everything she could obtain by a reversal of the order denying partial distribution and by our instructing the probate court to distribute to her separately 1,000 shares of the stock distributed to her in the decree. If any dividends have been paid since the order was denied, they will have gone into the assets of the estate of which appellant will receive under the decree of distribution half, unless they are required to be used to pay charges of the estate. (Appellant would in any event be liable for half of such charges.) So that there may be no further question in the matter and in the perhaps vain hope of trying to get this estate finally settled, the administratrix is ordered within 60 days of the date of the remittitur hereon to distribute 1,000 shares of the River Farms stock to appellant and a like number to herself, and in addition to obtain from the court a determination of the amount of estate assets required to be withheld to cover the claims and charges due or to become due from the estate, and then forthwith to deliver the balance of their distributive assets to appellant and herself.[15] Because this appeal has now become moot, it should be and hereby is dismissed.

The allowance in the decree of distribution of commissions to Mrs. Dow is reduced $294.90. The allowance of fees for extra services to Goldstein, Barceloux and Goldstein is 're- duced to $1,000. In all other respects the decree is affirmed. Respondent Mrs. Dow will recover costs, less the sum of $452.70, the amount expended by appellant for the transcript of certain testimony. (See *Estate of Dow, No. 17056* and *No. 17055*, this day filed (*post*, pp. 67, 69 [308 P.2d 488, 489]).)

Peters, P. J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied April 10, 1957, and appellant's petition for a hearing by the Supreme Court was denied May 8, 1957.

---

[15]See decision of the appeal from the order directing administratrix this day filed. (*Estate of Dow*, No. 17057, *post*, p. 69 [308 P.2d 489].)