[No. F003304. Fifth Dist. Sept. 28, 1984.]

Estate of LEO BLACK, Deceased.
DONNA GRAHAM, Petitioner and Appellant, v.
DONNA F. ROBERTS, as Co-executrix, etc., et al.,
Objectors and Appellants.

COUNSEL

J. Richard Thomas for Petitioner and Appellant.

Darling, Maclin & Day and Curtis Darling for Objectors and Appellants.

OPINION

**HANSON (P. D.), J.**—In this probate proceeding, we hold that petitioner, a beneficiary under the will and alleged unmarried partner of decedent, may seek a determination of claimed property rights arising during the couple's lengthy relationship without forfeiting, by operation of the will's no-contest clause, the specific gift of their residence. We reach this conclusion based upon our independent interpretation of the language of the will in light of uncontradicted facts in the pleadings; the merits of petitioner's claims to a partnership interest in property in the estate are not before us.

Both sides appeal from an order of the probate court under Probate Code sections 588 and 1080[1] ruling upon the petition of Donna Graham "FOR DETERMINATION OF INTEREST UNDER THE WILL AND FOR INTERPRETATION OF THE WILL" of decedent Leo Black and the response of the co-executors seeking instructions. Graham, a beneficiary and the alleged unmarried co-habitant of the deceased, sought a ruling that the filing of a proposed section 851.5 petition to determine an interest in property in the estate under theories of express or implied domestic partnership (*Marvin* v. *Marvin* (1976) 18 Cal.3d 660 [134 Cal.Rptr. 815, 557 P.2d 106])[2] would not violate the in terrorem or no-contest clause of the will. A copy of the proposed pleading was attached to the section 1080 petition.

---

[1] All statutory references are to the Probate Code unless otherwise indicated.

[2] In the *Marvin* decision, the California Supreme Court held that a party to a nonmarital living arrangement may be entitled to enforce property rights based upon express or implied in-fact agreement with the cohabitant, and that other equitable remedies may be available to protect the reasonable expectations of a nonmarital partner.

Donna F. Roberts and Thomas O. Gilbert, co-executors of the estate, filed opposition contending the filing of the section 1080 petition itself triggered the in terrorem clause.

Following a hearing, the court ruled by minute order that "the filing of the instant petition did not violate the in terrorem clause in the will; however, the subsequent filing of the proposed petition or an independent action under a *Marvin* theory would do so." A formal order stating these rulings was entered.

Graham appealed from the portion of the court's order determining that the filing of the proposed petition or an independent action would violate the in terrorem clause.[3] The executors filed a "NOTICE OF CROSS-APPEAL" attacking the portion of the order holding the filing of the section 1080 petition did not violate the no-contest clause.

FACTS

The petition was tried upon the documents and arguments of counsel and presents issues of law arising from basically uncontested facts. No question concerning the merits of the *Marvin* claim was litigated.

Leo Black, a widower with five children, lived with Donna Graham, to whom he was not married, from 1965 until his death on May 19, 1983, or nearly 18 years. Also living in the household during this time was Graham's adopted daughter, born in 1960. The proposed petition under section 851.5 alleges Black agreed to "support petitioner and her minor child and provide a home in which they all would reside, and . . . petitioner agreed to perform all the necessary functions of a typical housewife, including entertaining decedent's business acquaintances.

". . . . . . . . . . . . . . . . . . . . . .

"[P]etitioner in fact provided a home and family for decedent until his death, . . ."

Sixteen days before his death, Black executed a will which gave to Graham "if she shall survive me," a mobilehome (according to the executors, the residence of Black and Graham), and placed $50,000 in trust to provide for expenses for the home during the life of Graham "[s]o long as [she] is . . . using said mobile home, or a replacement thereof, as her pri-

---

[3]The court's order is appealable under section 1240, subdivisions (*l*) and (o). (See *Estate of Friedman* (1979) 100 Cal.App.3d 810, 813-814, fn. 2 [161 Cal.Rptr. 311].)

mary residence, . . ." The will further provided that the trust principal and income could be utilized, in the discretion of the trustees (executors Roberts and Gilbert), to provide for other needs of Graham "after taking into consideration any income or other means of health, education, support or maintenance available to her . . . ."[4]

The residue of the estate, which we are informed is valued at more than $900,000 including the remainder interest in the $50,000 trust, was left to Black's five children. Paragraph Seventh of the will provides as follows: "If any beneficiary under this will in any manner, directly or indirectly, contests or attacks this will or any of its provisions, any share or interest in my estate given to that contesting beneficiary under this will is revoked and shall be disposed of in the same manner provided herein as if that contesting beneficiary had predeceased me."

Decedent's will was admitted to probate and letters testamentary issued on June 27, 1983. On August 15, 1983, Graham filed the instant petition under section 1080; attached as exhibit "A" is a proposed pleading under section 851.5, claiming an undivided 50 percent interest in all the property held by Black at his death on the theory of a "*Marvin*-type domestic partnership implied in law, . . ."

## DISCUSSION

These appeals present two interrelated questions: (1) Did the filing of Graham's proposed section 1080 petition violate the no-contest clause of the will? (2) Would the filing of Graham's proposed section 851.5 petition claiming one-half the property possessed by decedent at his death on a theory of implied domestic partnership violate the no-contest clause? We answer both questions in the negative, affirming in part and reversing in part the order of the probate court.[5]

■ The obvious purpose of no-contest (in terrorem) clauses is to discourage will contests by imposing a penalty of forfeiture against beneficiaries who challenge the will. No-contest clauses are valid in California and have been said to be favored by the public policies of discouraging litigation

---

[4]The brief of the executors alleges Graham has a permanent disability in the nature of epilepsy and has no income except social security and welfare disability payments. Although these matters are not part of the record, counsel for Graham makes no objection and incorporates the additional facts in his reply argument.

[5]As no issues of fact are involved, we independently determine the effect of the will's provisions in light of the uncontradicted allegations in the pleadings. (*Estate of Dodge* (1971) 6 Cal.3d 311, 318 [98 Cal.Rptr. 801, 491 P.2d 385]; *Estate of Friedman, supra,* 100 Cal.App.3d at p. 815, fn. 4.)

and giving effect to the purposes expressed by the testator. (*Estate of Hite* (1909) 155 Cal. 436, 439-441 [101 P. 443].) However, "it is also the rule, and a salutary one, that such provision—being by way of forfeiture and condition subsequent—is to be strictly construed and not extended beyond what was plainly the testator's intent." (*Estate of Bergland* (1919) 180 Cal. 629, 633 [182 P. 277, 5 A.L.R. 1363].) "The policy against forfeiture is so strong that our courts, following the universal rule in this country, insist upon a clear and unequivocal attack upon the will before invoking the penalty contained in the *in terrorem* clause; . . ." (*Estate of Miller* (1963) 212 Cal.App.2d 284, 298 [27 Cal.Rptr. 909].)

California courts have accommodated these competing policies by determining on a case-by-case basis the crucial question of what constitutes a contest. (See Selvin, *Comment: Terror in Probate* (1964) 16 Stan.L.Rev. 355, 356-359, 362; Tucker, *If a Will is Contested . . .* (1975) 50 State Bar.J. 382, 407.) ■ "Whether there has been a contest within the meaning of the language used in a particular no-contest clause is determined according to the circumstances of the particular case. [Citations.] Thus, the answer cannot be sought in a vacuum, but must be gleaned from a consideration of the purpose that the testatrix sought to attain by the provisions of her will." (*Estate of Kazian* (1976) 59 Cal.App.3d 797, 802 [130 Cal.Rptr. 908]; *Estate of Hite, supra,* 155 Cal. 436, 441-444.)

In *Estate of Hite, supra,* 155 Cal. at pages 438-439, the decedent had executed various codicils altering the amount of legacies given to various individuals in the original will. Etta Gross, one of the affected legatees, filed a "Contest of Codicil" opposing probate of the particular codicil reducing her inheritance on grounds of nonexecution, want of mental capacity and undue influence. The contest was settled prior to hearing but the Supreme Court found Gross had forfeited her rights under the will even though she abandoned the legal proceedings after the favorable settlement. The court explained: "It does not follow herefrom that the mere filing of a paper contest, which has been abandoned without action and has not been employed to thwart the testator's expressed wishes, need be judicially declared a contest. But wherever an opponent uses the appropriate machinery of the law to the thwarting of the testator's expressed wishes, whether he succeed or fail, his action is a contest." (*Id.,* at p. 444.)

The *type* of attack involved in *Hite* is clearly a "contest" within any provision forbidding "contests," because the grounds there alleged are expressly included among the grounds for opposing or revoking probate under the Probate Code chapter entitled "Contests of Wills" (§§ 370-385). (See *Estate of Basore* (1971) 19 Cal.App.3d 623, 630 [96 Cal.Rptr. 874].) In contrast, other types of claims and proceedings raising questions not "sub-

stantially affecting the validity of the will" (§ 371) have been held not to constitute contests under even very broad in terrorem clauses. (See *Estate of Dow* (1957) 149 Cal.App.2d 47, 51, 53-57 [308 P.2d 475], and cases discussed therein; *Estate of Schreck* (1975) 47 Cal.App.3d 693, 695, fn. 2, 697-698 [121 Cal.Rptr. 218]; *Estate of Basore, supra,* 19 Cal.App.3d 623, 629-631.)

■ The executors contend, contrary to the determination of the trial court, that Graham's action in filing the section 1080 petition itself triggered the no-contest clause of the will and should result in forfeiture of the bequests to Graham. We disagree. Numerous cases hold that neither a petition under section 1080 to determine heirship nor a petition seeking construction or interpretation of a will is a "contest," although such proceedings might result in invalidation of certain of the will's provisions. (*Estate of Basore, supra,* 19 Cal.App.3d at pp. 629-631; *Estate of Zappettini* (1963) 223 Cal.App.2d 424, 426-429 [35 Cal.Rptr. 844]; *Estate of Harrison* (1937) 22 Cal.App.2d 28, 32-33, 41 [70 P.2d 522]; *Estate of Kline* (1934) 138 Cal.App. 514, 517, 521-523 [32 P.2d 677], and cases cited therein. *Estate of Goyette* (1968) 258 Cal.App.2d 768 [66 Cal.Rptr. 103], and *Estate of Harvey* (1958) 164 Cal.App.2d 330, 332 [330 P.2d 478], reach contrary results.)

In *Estate of Kruse* (1970) 7 Cal.App.3d 471, 476 [86 Cal.Rptr. 491], this court quoted its earlier opinion in *Estate of Miller* (1964) 230 Cal.App.2d 888, 903 [41 Cal.Rptr. 410], holding that instituting a proceeding for construction of the provisions of a will ordinarily does not violate a no-contest clause. "[S]eeking an interpretation of a will does not in and of itself constitute an attempt to thwart the will of a testator. In *Miller,* page 903, we said, 'Furthermore, it is the privilege and right of a party beneficiary to an estate at all times to seek a construction of the provisions of the will. An action brought to construe a will is not a contest within the meaning of the usual forfeiture clause, because it is obvious that the moving party does not by such means seek to set aside or annul the will, but rather to ascertain the true meaning of the testatrix and to enforce what she desired.' "

The executors argue that Graham's section 1080 petition should be held to violate the no-contest provision because it is in the nature of a declaratory relief action and has occasioned the expense and delay of a will contest. "Given [Graham's] appeal, what she is really seeking is a substantive decision on the merits of her proposed *Marvin* claim. She was plainly seeking more than a mere 'interpretation of the will' by her Probate Code section 1080 petition, which might otherwise not constitute an attack on the will. The section 1080 petition was clearly designed to *result in* a much larger

share of the estate going to appellant than the decedent gave her by the unequivocal terms of his will."

We find the argument unconvincing. As previously stated, the merits of Graham's proposed *Marvin* claim are not at issue in this proceeding. Rather, Graham sought a ruling by the probate court whether, in light of the no-contest clause, the filing of such a claim would cause her to lose the mobile-home which was given to her in the will. Such a determination requires interpretation of the will to ascertain the testator's intent and in no way frustrates the testamentary scheme. (See *Estate of Vanderhurst* (1915) 171 Cal. 553, 558-559 [154 P. 5].) That litigation of the section 1080 petition may entail substantial cost does not, without more, bring the proceeding within the scope of the forfeiture clause.[6]

Here, the wording of the in terrorem clause prohibits "contests or attacks" by a beneficiary upon the will "directly or indirectly, . . ." Both logic and the weight of authority hold that the bringing of a proceeding to determine the effect of such language should Graham file the proposed *Marvin* claim does not trigger a forfeiture. (*Estate of Miller, supra,* 230 Cal.App.2d 888, 903; see *Estate of Basore, supra,* 19 Cal.App.3d 623, 630-631.) In this case, as in *Estate of Bullock* (1968) 264 Cal.App.2d 197, 202 [70 Cal.Rptr. 239], "a proper and straightforward question . . . should not be prevented nor should access to the probate court be impeded by any threat of reprisal."

It would be manifestly unjust, as well as going far beyond the plain import of the testator's language, to impose a forfeiture where a beneficiary is "simply asking the probate court to state or instruct whether a forfeiture of a valuable right will ensue" (*Estate of Bullock, supra,* 264 Cal.App.2d 197, 202) if she brings an action to establish an interest in property held by decedent which arose independently of the will. Accordingly, we uphold the trial court's ruling on this point.

■ Graham appeals from the portion of the trial court's order determining that the filing of Graham's proposed section 851.5 petition or a separate

---

[6]Furthermore, in response to the petition, the executors not only requested the court to find that the filing of the proposed section 851.5 petition would constitute a violation of the in terrorem clause, but also sought a ruling that the filing of the section 1080 petition itself triggered the no-contest provision. The request for a determination of these matters was tantamount to a petition for instructions under section 588, and necessarily submitted to the court the question of the proper construction of the provisions of the will. Under the circumstances, the expense and delay attributable to litigation of this issue are not solely chargeable to Graham's action.

*Marvin*-type action would violate the no-contest clause. Graham contends an action to establish an implied domestic partnership under *Marvin* v. *Marvin, supra,* 18 Cal.3d 660 is not a "contest[] or attack[]" on decedent's will, because the claim is based upon an alleged source of right independent of the will, and the claim is brought in good faith upon probable cause. (See *Estate of Dow, supra,* 149 Cal.App.2d 47, 53-57.) For the reasons explained below, we conclude that the proposed claim does not invoke a forfeiture under the terms of decedent's will.

Proceedings by beneficiaries to assert claims to property based on a source of right independent of the will have been held not to be "contests" under a variety of forfeiture clauses. (See, e.g., *Estate of Schreck, supra,* 47 Cal.App.3d 693, holding that a no-contest clause similar to the one herein did not prevent a beneficiary who was the widow of the testator from claiming rights to joint tenancy property, which the testator had attempted to dispose of by will, or her statutory rights to a homestead; *Estate of Dow, supra,* 149 Cal.App.2d 47, in which a widow's claim to establish that property otherwise disposed of by will was community property was held not to violate the in terrorem clause; *Estate of Miller, supra,* 230 Cal.App.2d 888, holding that an action to establish a prior oral contract did not violate the no-contest clause; cf. *Estate of Madansky* (1938) 29 Cal.App.2d 685 [85 P.2d 576]; but see *Estate of Kazian, supra,* 59 Cal.App.3d 797 and *Estate of Howard* (1945) 68 Cal.App.2d 9 [155 P.2d 841], reaching contrary results.) Graham's proposed claim is founded upon her economic contribution as a homemaker to the nonmarital partnership (*Marvin* v. *Marvin, supra,* 18 Cal.3d at pp. 679-684; *Watkins* v. *Watkins* (1983) 143 Cal.App.3d 651, 653-654 [192 Cal.Rptr. 54]) and is analogous to a surviving spouse's claim to community or joint tenancy property outside the will. However, even if Graham were a surviving spouse, her ability to assert a claim to property standing in the testator's name without invoking the in terrorem clause would depend upon the language of the will expressing the testator's intent.

In *Estate of Kazian, supra,* 59 Cal.App.3d 797, cited by both parties, the decedent's will gave a modest amount to her surviving husband and left the bulk of the substantial estate in trust to her three children from a former marriage and to her grandchildren. The will specifically declared: " '[A]ll property in which I have an interest or which now stands in my name, or my former name, . . . is my sole and separate property, having been owned by me prior to my marriage to BILL KAZIAN, or having been acquired subsequent to my marriage to him, but from the proceeds of property owned by me prior to said marriage." (*Id.,* at p. 800.) The will further provided that any beneficiary would forfeit his interest if the will or any of its parts

or provisions were contested. (*Ibid.*) The court held that the independent action filed by the husband to establish all of the property in the estate was community property "was a proceeding intended to thwart the decedent's wishes as expressed in her will to which the no-contest clause contained in that will properly applied." (*Id.,* at p. 802, fn. omitted.)

In reaching this result, the *Kazian* court relied upon the context of the particular no-contest clause and specifically the testatrix' unequivocal declaration that all property disposed was her separate property. (See also *Estate of Howard, supra,* 68 Cal.App.2d 9, 10, fn. 1, 12, reaching the same result on similar facts, and a very comprehensive in terrorem provision.) The holdings in the *Howard* and *Kazian* cases were predicated upon the exact wording of the wills involved, and do not require a similar result here.

While the executors contend the proposed *Marvin* action is " 'designed to result in the thwarting of the testator's wishes' " (*Estate of Howard, supra,* 68 Cal.App.2d at p. 11) and therefore the trial court properly held it would violate the no-contest clause, decedent Black's wishes, particularly his intention concerning the scope of the no-contest clause, are expressed very differently from those of the testator in the *Howard* case. Decedent's will includes this statement: "It is my intention to dispose of all of my property, both real and personal, which I have the right to dispose of by will, including any and all property as to which I may have a power of appointment by Will."

Graham contends that under the rationale of *Marvin,* the decedent did not have the right and did not intend to dispose by will of that property which represents her partnership interest based on the lengthy unmarried relationship, and which she was entitled to claim regardless of the will. We find this interpretation persuasive. The will does not declare an intention to distribute an estate totaling $900,000 in the manner described in the will; the expressed intent is to dispose of that property of the decedent which he had the *right* to dispose of by will. This frames a different situation from that found in *Estate of Kazian, supra,* 59 Cal.App.3d at page 800 and *Estate of Howard, supra,* 68 Cal.App.2d at page 12, where the wills expressly referred to designated property as separate property.

In *Estate of Schreck, supra,* 47 Cal.App.3d 693, the court strictly construed, to avoid a forfeiture, a similar no-contest clause where the testator's widow claimed as surviving joint tenant the remaining one-half interest in

their Cadillac and successfully petitioned the probate court to set apart a probate homestead. The clause in *Schreck* provided: "If any person shall, in any manner whatsoever, directly or indirectly, attack, oppose or contest this will, or seek to invalidate it or any portion thereof, or seek to succeed to any part of my estate except through this will, then I give to each such person the sum of One Dollar ($1.00) only, in lieu of any, other, and all provisions made for such person hereunder . . . ." (*Id.*, at p. 695, fn. 2.) Although the will directed that the testator's tangible property be sold and the proceeds placed in a testamentary trust, the court flatly stated: "We think it clear that under . . . a strict construction the widow's challenged conduct did not come within the first clause of the provision at issue dealing with direct and indirect attacks upon the validity of the will or any part thereof. Moreover, her conduct did not come within the second clause . . . relating to succession to any part of the testator's estate except through his will. . . . Certainly the widow's establishing her ownership as surviving joint tenant of the remaining one-half interest in the Cadillac (once erroneously included within the reported estate of the testator) is not a succession to any part of the testator's estate. The widow merely claimed what was already her own." (*Id.*, at p. 697.)

Here, the decedent did not express a clear intent to forfeit to the residuary legatees the limited provision made for his surviving partner of nearly 18 years by reason of her attempt to establish independently of the will an interest in property held by decedent at his death. Under the reasoning of *Schreck*, Graham should suffer no penalty for asserting a claim to property which, assuming she prevails in her *Marvin* action, already belongs to her. It is reasonable to conclude the decedent did not intend to preclude Graham, ill and without adequate funds, from receiving the use of the mobilehome if she pursued her implied contract rights.

Finally, we note that decedent's will was drafted by an attorney several years after *Marvin* became the law of California. If the testator had wished to provide that a *Marvin* claim would trigger the provisions of the in terrorem clause, he could have done so.[7]

The portion of the court's order determining that the filing of Graham's section 1080 petition did not violate the no-contest clause of the will is affirmed. The portion of the order challenged by Graham is reversed with

---

[7]The executors contend for the first time on appeal that decedent intentionally adopted the provisions of the will because he was aware that (1) estate taxes and costs would reduce the amount of each child's share; and (2) Graham's right to receive social security and/or disability payments was subject to income limits. However, these "facts" are contained nowhere in the record and are not properly before us.

directions to enter an order declaring that the filing of the proposed *Marvin* claim does not constitute a violation of the in terrorem clause.

Franson, Acting P. J., and Ardaiz, J.* concurred.

The petition of objectors and appellants for a hearing by the Supreme Court was denied November 28, 1984.

*Assigned by the Chairperson of the Judicial Council.