230 Cal.App.2d 888 (1964)
Estate of KATHERINE G. MILLER, Deceased. MIRIAM MILLER HARTMAN, Petitioner and Appellant,
v.
BURKE E. BURFORD, as Executor-Trustee, etc., Petitioner and Respondent; CHARLES DAVISON FIELD, Objector and Appellant.
Civ. No. 352. 
California Court of Appeals. Fifth Dist. 
Nov. 24, 1964.
 Hutchinson & Quattrin and J. Albert Hutchinson for Petitioner and Appellant.
 Alef & Schnitzer and Arthur Alef for Objector and Appellant.
 Burke E. Burford, in pro. per., and Burford, Hubler & Burford for Petitioner and Respondent.
 CONLEY, P. J.
 The legal relationships of the various parties interested in this probate proceeding are again before this court. Once before the Fifth District Court of Appeal has passed upon certain rights of the parties, the opinion being reported as Estate of Miller, 212 Cal.App.2d 284 [27 Cal.Rptr. 909]; it will be unnecessary to repeat in detail all of the factual matters set forth in that opinion.
 Although there are only one reporter's transcript and one clerk's transcript, there are in fact four appeals which the court must dispose of. Miriam Miller Hartman appealed from the decree of the probate court settling the second, third, fourth, and supplemental accounts and reports, allowing statutory fees and fees for extraordinary services and for final distribution. Mrs. Hartman also appealed from the order of the court relative to the rights and duties of the *893 trustee, Burke E. Burford, the scrivener of the will, who is also executor of the estate. There is also a cross-appeal by Charles Davison Field, a grandson of the testatrix, from those portions of the order of the court of September 20, 1963, relative to the distribution to the trustee for the benefit of Miriam Miller Hartman and an appeal by him from the similar provisions of the final decree of distribution.
 At the time she made her will of November 14, 1958, and the codicil of March 1, 1959, Katherine G. Miller was the widow of Dr. Austin V. Miller, a physician practicing his profession in the City of Porterville. Dr. and Mrs. Miller had three daughters, Sally Miller Field, Miriam Miller Hartman, and Marcia Miller Nelson. The family had been a closeknit and apparently loving family with particular ties of affection existing between the mother and father and each of the daughters. The Millers had educated their offspring and particularly favored the professional aspirations of Miriam by paying for her training as a Doctor of Medicine specializing in ophthalmology. Unhappily, she had been recently troubled by what is termed a disease in the record, an habitual overindulgence in alcohol, temporarily at least, which seemed to put an end to any aspiration on her part to continue to be a skillful and successful medical practitioner. The situation eventually became so bad that she was formally deprived of her license to practice medicine. At that time her beloved mother made her will and the codicil attached to it, and it is quite simple in reading between the lines to see that, while the mother still loved her three daughters and desired to have all of them benefit by the joint accumulations of Dr. Miller and herself, she was acutely aware that Mrs. Hartman in her then condition could not unassisted safely and properly handle her share of the estate and that a trust should be created.
 It is equally obvious that the mother desired with all her heart that her three daughters should be well cared for and should have the benefits of the family accumulations which she was passing on. She gave outright one-third of her property to Mrs. Nelson and one-third to Mrs. Field, and set up a trust with her attorney, Mr. Burke E. Burford, for the remaining one-third.
 From what is said in the document viewed with the foregoing background, it is crystal clear that it was the essential wish of the mother that the daughters be basically treated alike; with respect to a one-third share of the property the *894 then pending situation relative to alcoholism made it essential that during the continuation of her unfortunate addiction to alcohol, the third daughter should not have title to the property itself, but the use of the income only.
 Mrs. Miller's will declared that she was the widow of Austin V. Miller, that he died December 31, 1955, and that she had "... three (3) adult daughters the issue of this marriage, to wit: Miriam Miller Hartman, born April, 1911, and the wife of Irving Pierce Hartman; Marcia Miller Nelson, born November 8, 1919, and the wife of Aubrey Orville Nelson; and Sally Miller Field, born January 15, 1908, and the wife of John Field. I have no other children living or deceased." She then names her then existing grand- children in the Nelson and Field families. By the THIRD paragraph of her will she leaves a one-third interest in her estate to Marcia Miller Nelson, a one-third interest to her daughter, Sally Miller Field, and a one-third interest in trust to the trustee principally for the daughter, Miriam. [1] The will continues:
 "FOURTH: Testamentary Trust:"
 "1) During the life of my daughter, Miriam Miller Hartman, my Trustee is to pay from the income of the Trust to Miriam Miller Hartman, or to any legally appointed guardian acting on her behalf or to pay on her behalf, such sums as my trustee, in his sole discretion, shall determine as necessary to supplement any other income or source of funds she may have, to provide for her support and maintenance. My Trustee is especially cautioned and directed not to make disbursements to pay for, or for which may be used for alcoholic beverages. Should the payments made by my Trustee for support of said beneficiary not consume all of the income, any income not so consumed shall be paid to and become a part of the corpus of the trust."
 The will next provides that when Miriam Miller Hartman dies and the expenses of her last illness and her burial have been paid, the remaining corpus of the trust shall be divided among Mrs. Miller's then living grandchildren; if one of them has died, leaving children, then such surviving children shall also share.
 The testatrix further provides: "In the event the net income of the trust is not sufficient to provide for the support and maintenance of my said daughter including all necessary medical care and nursing she may require, my Trustee shall distribute to her or on her behalf out of the corpus of the *895 trust such sums as the Trustee may determine to be necessary to argument [sic] [augment] the income to provide for such support and maintenance and medical care."
 The will then includes a spendthrift clause and proceeds to give specifically detailed powers to the trustee. However, there are certain qualifying phrases and clauses used in this connection and, although there are at places in the document words which give very wide powers to the trustee, these phrases and clauses show on their face that the testatrix did not mean to give him uncontrolled arbitrary power, but rather that he should function in accordance with the common custom of similar trustees. For example, in paragraph 5(a)(2) of the FOURTH provision of the will relative to the testamentary trust, the document provides a standard of action by the trustee, requiring that at all times he should be:
 "Exercising the judgment and care, under the circumstances then prevailing, which men of prudence, discretion and intelligence exercise in the management of their own affairs, not in regard to speculation, but in regard to the permanent disposition of their funds, considering the probable income, as well as the probable safety of their capital, my Trustee is authorized to invest and reinvest all principal in any kind of property, real, personal, or mixed, and in any kind of investment, specifically including, but not by the way of limitation, corporate obligations of every kind, and stocks, preferred or common. My Trustee may continue to hold property received into this trust at its inception or subsequently acquired if and as long as my Trustee, in the exercise of good faith and of reasonable prudence, discretion, and intelligence, may consider that retention is in the best interest of the Trust."
 An objective standard is also thus provided in paragraph 5(b)(4) of the FOURTH provision of the instrument:
 "In other respects, all matter relating to principal and income--save as otherwise in this Will provided--shall be governed by the provisions of the California Principal and Income Act as it exists from time to time, and, in the event no such act is in force, then all such other matters shall likewise be determined in the sole discretion of my Trustee."
 Mrs. Hartman is given plenary power to inspect all records kept by the trustee and that the testatrix intended that the court should supervise and control the trust is recognized in the provision designated FOURTH (5) (d):
 "d. Accounting: I direct that my Trustee render, at least *896 annually after my death, an accounting and report of his trusteeship to be judicially settled by the Court having jurisdiction of the trust herein and that a copy of said account and report be rendered to such of my income beneficiaries and remaindermen under the trust created herein as shall request the same by filing of request for special notice with the said Court."
 That the principal purpose of the trust is to take care of Mrs. Hartman through employment in her favor of all income necessary "... to provide for her support and maintenance ..." is stressed by the requirement that the trustee should budget the estimated annual income of the trust for the purpose of periodic payments to her in paragraph FOURTH (5) (b):
 "To budget the estimated annual income and expenses of the trust in such a manner as to equalize, as far as practicable, periodical payments to beneficiary."
 The will contains an in terrorem clause in the FIFTH paragraph. It further provides that taxes shall be paid as to all beneficiaries from the main body of the property; it then nominates Mr. Burford as executor and as trustee and contains the following:
 "In the event my Trustee acts as his own attorney, individually or as a member of a law firm, I direct that he should be allowed reasonable fees as Trustee for his services in the administration of this trust in addition to any fees that may be allowable to the attorney for the Trustee."
 A similar provision is made for double fees for Mr. Burford as executor either individually or as a member of a law firm representing the executor.
 The codicil to the last will was executed on the 1st day of March, 1959; it changed the will only in this respect: that upon the death of Miriam Miller Hartman, her husband, Irvin Peers Hartman, should become the beneficiary of the trust. However, Irvin Peers Hartman has since died and the codicil is ineffective by reason of that fact.
 The uncontradicted evidence in the present record shows that Mrs. Hartman is completely rehabilitated. She no longer drinks anything with an alcoholic content, and the State Board of Medical Examiners has reissued her license; she is in every sense ready to take up again the full practice of her profession for which her long training was furnished by her mother and father, except that she is without the present financial means to acquire the necessary precision instruments *897 and other paraphernalia required in the office of a doctor specializing in ophthalmology. It is an easy inference from the uncontradicted facts in the case that if Mrs. Hartman had reestablished herself prior to the drawing of her mother's will she would have shared her parents' property with her two sisters; because of her then temporary inability to care properly for one-third of the family fortune, she was restricted by the will to the use of the income from that third with the specific right given the trustee to invade the corpus of the property itself to assure her of proper support and maintenance. The intent of the testator is to be sought in interpreting any will; it seems certain that in the circumstances the phrase "support and maintenance" used by Mrs. Miller would be intended to include the instruments needed by Mrs. Hartman to carry on her profession.
 We shall first consider the appeals of Charles Davison Field; he maintains that Mrs. Hartman is not entitled to take anything under the will because of her alleged violation of the in terrorem clause. The FIFTH numbered paragraph of the will reads as follows:
 "FIFTH: I have intentionally omitted making provision for all of my heirs who are not specifically mentioned herein, and I hereby generally and specifically disinherit each, any and all persons whomsoever claiming to be or who may lawfully be determined to be my heirs at law except such as are mentioned in this Will, and if any of such persons, or such heirs, or any devisees, or legatees, or beneficiaries under this Will and the trust herein created, or intended to so be, shall contest in any court any of the provisions of this instrument, or shall not defend or assist in good faith in the defense of any and all such contests, then each and all of such persons shall not be entitled to any devises, legacies or benefits under this Will or any codicil hereto or under the trust created hereby, and any and all devises, legacies and portions of the income and corpus of the trust estate either or both otherwise provided to be paid to such person, shall be paid, distributed and pass as though such person had died without issue of his or her body before my death or before becoming entitled to receive income or any portion of the corpus of said trust estate."
 [2] Mr. Field, of course, is only a contingent beneficiary of the trust. He is the son of Sally Miller Field, one of the daughters of the testatrix. He may never inherit anything by reason of that relationship. His only chance of taking *898 anything at all is in the event that he shall survive Mrs. Hartman; whatever is left of the corpus of the estate will then be divided according to the terms of the will among the grandchildren; if one of the grandchildren is dead, his own children shall take per stirpes according to the provisions of the document. This division of the ultimate corpus of the trust property was obviously a subordinate or secondary consideration of the testatrix in that the support of her daughters, including Mrs. Hartman, is the primary objective of the will; it will be remembered that Mrs. Hartman is to receive the income from the trust property during her lifetime (she now being 53 years of age) and the trustee is given the right if necessary to invade the corpus of the trust property in order properly to support and maintain Mrs. Hartman. Where there is a gift to a class postponed to the termination of a preceding estate "... only those take who are in existence at the arrival of the time for distribution" (90 C.J.S., Trusts, 169, p. 42); Mr. Field has no vested interest under the trust provisions in the will (Anglo California Nat. Bank v. Kidd, 58 Cal.App.2d 651 [137 P.2d 460]; 48 Cal.Jur.2d, Trusts, 124, pp. 765, 766). [3] However, as a contingent beneficiary under the trust he could, if he should act in a timely fashion, raise the question whether his aunt had forfeited her right to any part of the estate by reason of the provisions of the in terrorem clause. (Estate of Plaut, 27 Cal.2d 424, 428 [164 P.2d 765, 162 A.L.R. 837]; Estate of Kovacs, 227 Cal.App.2d 308, 313 [38 Cal.Rptr. 612].) If he acted too late, his efforts would be fruitless entirely apart from the question of whether they had any merit, abstractly considered. In her briefs, Mrs. Hartman suggests that Mr. Field was too late in filing his objection to her taking in that it was not urged until after the partial distribution became final, under which Mr. Field's mother and his aunt, Mrs. Nelson, each received a one-third share of the estate and also because no effective appeal is taken by him from the same dispositive features of the final decree of distribution. It is contended that if anyone should seek to bar another from taking under a will by reason of an in terrorem clause the move must be made while the estate itself is open and before either a partial or final disposition of the property covered by the will. Neither Mr. Field nor any other party raised the question at that time and it is seriously contended that in any event the objection by Mr. Field comes too late. While prima facie these observations seem to have some degree of merit, it will be unnecessary to *899 determine the point, as we have concluded that in any event Mrs. Hartman did not "contest" the will and that the in terrorem clause could not, therefore, take effect against her.
 [4a] Mr. Field contends that Mrs. Hartman forfeited her rights in three different ways: first, by filing a suit in San Mateo County, which he says was in effect a "contest"; secondly, by attempting to remove Mr. Burford as executor; and, thirdly, by an attack upon the assumed extent of the discretion granted to the trustee in the trust provisions.
 With respect to the first point: Mrs. Hartman filed a complaint in the Superior Court of San Mateo County on August 8, 1961, in which Burke E. Burford as executor of this estate, Marcia Miller Nelson, Sally Miller Field, and the children of the last two named persons were named as defendants; that complaint alleges that Katherine G. Miller and her predeceased husband entered into a contract by which each agreed to leave his or her estate to the surviving spouse and then over, in equal shares, to their three daughters, and that the "purported will" does not conform to the agreement in that it leaves the share of Miriam Miller Hartman in trust rather than outright to her. The complaint further avers:
 "Defendants, and each of them, intend and threaten to cause the distribution of the estate of decedent, to the extent of one-third (1/3) thereof to defendant Burford as such purported trustee in accordance with the purported will of decedent in violation of said agreement by and between decedent and decedent's spouse, as aforesaid; plaintiff has no plain, speedy or adequate remedy at law available to prevent said threatened distribution of said one-third (1/3) of decedent's estate to defendant Burford as such purported trustee, as aforesaid; and if the equitable relief herein sought is not granted, plaintiff will be defrauded and will suffer great and irreparable injury and damage in being deprived of the benefit of said agreement by and between decedent and decedent's spouse, as aforesaid, specially made for her benefit, and of the will of her father, decedent's spouse, made and maintained in accordance with said agreement aforesaid."
 [5] A "contest" of a will may result in a forfeiture in California if the will contains a properly drawn in terrorem clause denouncing contests and providing for forfeiture in such circumstances. (Estate of Lefranc, 38 Cal.2d 289, 294 [239 P.2d 617]; Estate of Miller, 156 Cal. 119, 121-122 [103 P. 842, 23 L.R.A. N.S. 868]; Estate of Hite, 155 Cal. 436 [101 P. 443, 17 Ann.Cas. 993, 21 L.R.A. N.S. 953]; Estate *900 of Harvey, 164 Cal.App.2d 330, 332 [330 P.2d 478]; Estate of Fuller, 143 Cal.App.2d 820, 824 [300 P.2d 342].)
 [6] Much depends upon the phrasing and reach of the in terrorem clause even though such clause must be strictly construed. (In re Kitchen, 192 Cal. 384, 389-390 [220 P. 301, 30 A.L.R. 1008]; Estate of Fuller, supra, 143 Cal.App.2d 820, 824.)
 The authorities chiefly relied upon by Mr. Field factually are not closely in point, as the phrasing of the in terrorem clauses in those cases is much more inclusive than that contained in the present will. For example, reliance is placed upon Estate of Howard, 68 Cal.App.2d 9, 11 [155 P.2d 841]. There the ninth paragraph in the decedent's will provided for forfeiture "... in case such devisee or legatee should 'commence any suit or action, or submit to any court or other tribunal, or be a party to any pleading or proceeding, which suit, action, pleading or other proceeding assails or draws in question the validity or operation of any of the provisions of said will, or shall in any way question my acts in making this will, or any of its provisions. ...' " In that case, the evidence showed that the husband of the decedent claimed in a court action that all of the land in the estate was community property so that the testatrix had no right to devise all of the property involved; this contention contravened the particular in terrorem clause. But the suit was not a "contest" in the ordinary sense of the word.
 Although in Estate of Lynn, 109 Cal.App.2d 468, 469 [240 P.2d 1001], the court was not required to decide the specific question here involved, the discussion in the opinion showed that there the will contained more than a provision against a contest; it added that if any one should "object to any of the provisions" of the will he should not receive anything under it.
 Again, in Estate of Markham, 46 Cal.App.2d 307, 310 [115 P.2d 866], the in terrorem clause was much broader in its application than the clause in the present case; the will provided that if anyone should "... seek to establish or assert any claims to my estate or any part thereof, excepting under this Will, or attack, oppose or seek to set aside the probate of this Will, or to impair, invalidate or set aside its provisions, or to have the same or any part thereof, or any devise or devises, or trust herein limited, declared void or diminished, or to defeat or change any part of the testamentary plan of this Will, or settle or compromise, directly or indirectly either *901 in or out of court, with any contestants of this Will, or shall consent to, acquiesce in or fail to contest such proceedings, or shall endeavor to secure or take any part of my estate in any manner other than through or under this Will" such person should take only one dollar.
 And In re Kitchen, supra, 192 Cal. 384, 387, the clause was also broad; it did not stop with forbidding "contests," but provided: " 'In case any person or persons to whom any legacy or benefit out of, from or by reason of this my will, shall commence any suit in any court whatsoever, or by any ways or means, sue and disturb, or cause to be sued and disturbed, my executor herein named, or any other person or persons whatsoever, to whom anything is by me given in this my will, from the recovering, quiet enjoying and possessing, of what is by me herein given as aforesaid, and in such manner as is therein mentioned, then my will and meaning is, that all and every legacy and legacies, herein by me given to any such person or persons whatsoever who shall so sue and disturb as aforesaid shall cease, determine and be utterly void.' "
 Obviously, the foregoing authorities cited by Mr. Field are not persuasive in this case where the key word used by the testatrix is "contest." Was the trial court wrong in holding that the testatrix meant to employ the word "contest" in the sense so clearly defined in the appropriate code sections? [7] The will was drafted by Mr. Burford, an attorney at law and legal technician, and it is to be presumed that he used the word with its technical meaning (Prob. Code, 106). (Estate of Carter, 47 Cal.2d 200, 205 [302 P.2d 301]; Estate of Rutan, 119 Cal.App.2d 592, 598 [260 P.2d 111]; Estate of Bourn, 25 Cal.App.2d 590, 595 [78 P.2d 193].)
 [8] In a probate proceeding such as this, lawyers and judges would normally read the word "contest" as it is employed in the probate code in connection with wills (Prob. Code, div. 3, ch. 2, arts. 1 and 2, 370-385). Actually, the word "contest" in somewhat similar situations has usually been given that meaning. (See Estate of Miller, supra, 212 Cal.App.2d 284, 296; Swift v. Superior Court, 39 Cal.2d 358 [247 P.2d 6]; Estate of Plaut, supra, 27 Cal.2d 424; Estate of Sankey, 199 Cal. 391, 403 [249 P. 517]; Estate of Moore, 180 Cal. 570, 571-575 [182 P. 285]; Estate of Moran, 122 Cal.App.2d 167 [264 P.2d 598]; Selvin, Terror in Probate, 16 Stan.L.Rev. 355 et seq.)
 It has been held frequently that a provision such as the *902 present in terrorem clause "being by way of forfeiture and condition subsequent--is to be strictly construed and not extended beyond what was plainly the testator's intent." (Estate of Bergland, 180 Cal. 629, 633 [182 P. 277, 5 A.L.R. 1363]; Lobb v. Brown, 208 Cal. 476, 484-485 [281 P. 1010]; Estate of Dow, 149 Cal.App.2d 47, 53 [308 P.2d 475]; Estate of Crisler, 97 Cal.App.2d 198, 200-201 [217 P.2d 470]; 49 A.L.R.2d 198, 204.)
 The courts of this state have held in a variety of cases that there is no forfeiture. For example, a claim to property in the estate made on the ground that it is community property and, therefore, distributable to the surviving spouse rather than under the will is not as rather recently said a forfeiture "contest" (Estate of Dow, supra, 149 Cal.App.2d 47, 50-56; Colden v. Costello, 50 Cal.App.2d 363 [122 P.2d 959]); nor is there a "contest" when there is an attempt to enforce a claim for money (Estate of Dow, supra; Estate of Madansky, 29 Cal.App.2d 685 [85 P.2d 576]); furthermore, when there is an attempt to secure specific property which is apparently in the estate it is not a contest (Liggett v. Liggett, 341 Mo. 213, 220, 222 [108 S.W.2d 129, 132-133]) even though the claim is based upon an alleged source of right independent of the will; a motion for dismissal of a probate proceeding on the ground of lack of jurisdiction is not a contest (Estate of Crisler, supra, 97 Cal.App.2d 198); nor is opposition to distribution which would result in changing the recipient of estate property (Estate of Price, 56 Cal.App.2d 335 [132 P.2d 485]).
 As remarked in Estate of Scott, 217 Cal.App.2d 111, 116 [31 Cal.Rptr. 438]: "Here the probate court decided that the petition of the executrix asking that the charitable legacies be reduced under section 41 was not a contest within the meaning of article Eleventh of this will. We cannot say that this interpretation was erroneous."
 The second and third grounds alleged by the appellant Field for barring Mrs. Hartman may quickly be disposed of. Her move was not based upon the executor's lack of original qualifications, but objection was made rather to the manner in which he carried on the estate's affairs in large part inimically to Mrs. Hartman, as she contended. [9] It is always proper for a beneficiary of an estate who believes that the executor is not fulfilling his duty to make the objections which the code permits without risk of suffering a penalty provided by an in terrorem clause. It has even been held in this state *903 that an objection to the appointment of a second executrix designated in a will does not of itself give ground to invoke a forfeiture even though the in terrorem clause provides that there should be forfeiture by any beneficiary who does not "acquiesce in this ... will ... and all provisions thereof." (Estate of Blackburn, 115 Cal.App. 571 [2 P.2d 191]; Selvin, Terror in Probate, 16 Stan.L.Rev., supra, 355, 359, note 25.)
 [10] Furthermore, it is the privilege and right of a party beneficiary to an estate at all times to seek a construction of the provisions of the will. [11] An action brought to construe a will is not a contest within the meaning of the usual forfeiture clause, because it is obvious that the moving party does not by such means seek to set aside or annul the will, but rather to ascertain the true meaning of the testatrix and to enforce what she desired. (Estate of Vanderhurst, 171 Cal. 553 [154 P. 5]; Estate of Bergland, supra, 180 Cal. 629; Lobb v. Brown, supra, 208 Cal. 476, 484; Estate of Brisacher, 27 Cal.App.2d 327 [80 P.2d 1033]; Estate of Briggs, 139 Cal.App.2d 802, 806-807 [294 P.2d 478]; Estate of Harrison, 22 Cal.App.2d 28, 40-41 [70 P.2d 522]; Leavitt, No-Contest Clauses in Wills, 15 Hastings L.J. 45, 73.)
 In Zappettini v. Ferroggiaro, 223 Cal.App.2d 424, 427-428 [35 Cal.Rptr. 844], the court held: "... it has also been determined that when the action of the legatee is merely one to determine the true construction of the will, or any of its parts, the action cannot be held to breach the ordinary forfeiture, or no-contest, clause. (Estate of Kline (1934) 138 Cal.App. 514, 523 [32 P.2d 677]; Estate of Briggs (1956) 139 Cal.App.2d 802, 807 [294 P.2d 478].)"
 [4b] We will not interfere with the determination of the trial court on this point; we hold that there has been no contest of the will by Mrs. Hartman within the meaning of the FIFTH paragraph of the will. The appeals by Mr. Field are without merit.
 The next group of objections is made by Miriam Miller Hartman to the form and content of the decree of final distribution. [12a] Some of the points sought to be raised are too general, others are not sharply defined, and with respect to most of them there is a failure on the part of the appellant to make a specific evidentiary showing in support of the objections suggested by her; that this is so is illustrated in appellant's opening brief where it is said: "The restriction on inquiries on this subject, curtailment of cross-examination and the inevitable exigencies of ferreting out Burford's defaults *904 as executor in open court and without the presence of his records prevented appellant from advancing correct computations on these subjects."
 Whatever the cause, it seems certain to us that counsel did not make a record which would justify a reversal of the decree by the appellate court.
 [13] Bitter complaint is made of the fact that the court granted $6,000 to Mr. Burford and $8,000 to his firm for extraordinary services. To read certain portions of appellant's briefs one would infer that this total sum was awarded exclusively for only portions of the alleged extraordinary services, for example, that this total amount was awarded for the participation by Mr. Burford and his counsel in the first appeal in the case, where, as pointed out in the opinion on that appeal, Mr. Burford should have been an appellant rather than a respondent. However, the extraordinary services were neither confined to the former appeal in the case nor to the work done by the executor and his attorneys in connection with the pending San Mateo case. Attached to the supplemental report of executor and petition for final distribution filed on August 23, 1963, is Exhibit D, which contains a five-page statement of the extraordinary services of himself and his attorneys covering many legal activities in addition to the first appeal and the San Mateo case. There is nothing in the transcript in detailed opposition to these allegations, and we have no legitimate basis in the record to find that the trial court had no ground to make such an award; this has been a long drawn-out and complex proceeding, strongly contested by Mrs. Hartman and her counsel, and we have no just ground, founded on the record, to interfere with the trial court's conclusion as to the reasonable value of the services rendered.
 [12b] Counsel for Mrs. Hartman also questions the wisdom of the trial court in making allowances with respect to income taxes. The points attempted to be made by appellant are not effectively supported by the evidence and there is no apparent ground upon which we can legitimately interfere with the trial court's approval of the tax items.
 [14] Again, it is urged that the temporary withholding of $20,000 for the purpose of permitting the executor to defend the San Mateo case on behalf of the estate is not a sound order in view of the fact that none, or only a small part of that money may be used; but this is not ground for reversal, particularly in view of the fact that the probate court must pass ultimately on whether all of it, or the major part of it, *905 should go to the heirs. However, a word is required in connection with the position of the executor as a party defendant in the San Mateo case. [15] Before partial distribution, Mrs. Hartman acting in good faith instituted the suit in San Mateo County whereby she claimed as a third party beneficiary of an agreement between her father and mother, that she was entitled to one-third of the property owned by her mother and father by virtue of a contract between them prior to the effective date of the probate of the will. Before the filing of the San Mateo County suit, Mr. Burford had been appointed executor of the will of Mrs. Miller in Tulare County, and Mrs. Hartman made him a party defendant as such executor. The question was raised in the San Mateo action whether an alleged contract between Dr. Miller and his wife controlled the property in question, or whether the assets in question were to be distributed under the will of Mrs. Miller. Mr. Burford represented the property in the Tulare County proceedings, and it was within the legitimate jurisdiction of the Tulare County court to order that he file an appearance in the San Mateo case on behalf of everyone claiming rights under the estate. This viewpoint was in conformity with common sense and gave assurance that the estate should not be disregarded in the new litigation. The Tulare County court directed Mr. Burford to appear on behalf of all those interested in the estate, and he acted accordingly. It now appears that there is a likelihood that the executor will be dismissed as a party defendant in the San Mateo action; if the executor, by reason of dismissal as to him, or otherwise, shall no longer have any function in the San Mateo case, the effect of the order in the Tulare County estate matter obviously will end, and the payment of any estate money thereafter cannot be authorized either by the general situation or by a specific order. In such event, the $20,000, or what is legitimately left of that amount, will properly be divided in subsequent proceedings among those entitled to it as estate property in accordance with the will. In order to make entirely clear and unmistakable what is, or should be, already obvious from the previous decree, there should be added to the "Judgment Settling Second, Third, Fourth, and Supplemental Accounts and Reports of Executor, Allowing Statutory Fees and Allowing Extraordinary Commissions, and of Final Distribution under Will" the following:
 "In the event that the executor shall hereafter be dismissed as, or shall otherwise cease to be, a party defendant in *906 Hartman v. Burford et al., San Mateo No. 95677, he shall no longer have any right or duty to appear therein, as such executor, or to incur or make any payment of expenses, costs or attorneys' fees as such executor in connection therewith."
 [16] Entirely aside from the good sense of the foregoing observation, the matter of the direction by the court to Mr. Burford as executor with respect to the San Mateo case has been, and is, res judicata by reason of the fact that the order of preliminary distribution has heretofore become final and is by reason of that fact binding upon all parties (Estate of Freman, 185 Cal.App.2d 527 [8 Cal.Rptr. 311]) with, of course, the understood limitation on the ultimate participation in that case by Mr. Burford as above set forth.
 In view of what has been said, it will be an unnecessary and thankless labor to plow through the thicket of objections made by appellant without proper support in the record. It is sufficient to say that we do not find any defect which would justify us in reversing the final decree of distribution or in modifying it except in the instance above specifically mentioned.
 We turn, finally, to the main point of the appeals from the standpoint of Mrs. Hartman, namely, her contention that she has not been accorded the rights which she should justly have under the will and the equitable theory of trusts. On the one hand, the appellant claims that the provision of paragraph Fourth of the will giving "sole discretion" to Mr. Burford with respect to the payment of income from the trust property is void because there is no literal specification of what considerations should control him in the exercise of that discretion, and that the law nullifies an unlimited discretion on the part of any trustee. On the other hand, it is inferentially suggested, rather than specifically claimed by the trustee, that the absolute discretion mentioned in that provision of the will should be unchecked by rule or custom or by supervision of the court. Neither extreme is correct.
 [17] Appellant urges that as there is no detailed rule set forth in the trust provisions of the will clearly defining and limiting the literal meaning of the discretion of the trustee the entire trust provision is a nullity; it is true that the adjective qualifying the word discretion indicates plenary discretion. But the lack of explicit definition of the discretion granted does not destroy the trust. For in practically all trusts, through the years in England and in this country, there is some degree of discretion granted to a trustee; in the first place he has title and control of the corpus of the property *907 itself and he is usually given some latitude of choice with respect to the handling of the property and the observance of trust provisions. Such discretion is actually limited by custom and practice and particularly by the express intention of the settlor.
 [18] A trust created by will is properly controlled by the expressed intention of the testatrix; the particular language used is always important but the purpose of a trust is to be carried out no matter what the document says about the trustee's discretion. [19] It is obvious that the discretion given to a trustee is never unlimited or arbitrary, such as might be exercised by an oriental prince out of the Arabian Nights, sitting at the city gate and exercising his own uncontrolled whim as to what is appropriate and just. The purpose of the creation of the trust, the intent of the testatrix, and the objective of the document must be given preponderate weight.
 In Estate of Ferrall, 41 Cal.2d 166, 176-177 [258 P.2d 1009], it is said: "When we pass to the consideration of the duty of the trustees in the administration of the trust and their conduct in compliance therewith, there is no divergence of authority to the effect that the trust must be administered in accordance with the intentions of the settlor. The rule is well stated in section 187, comment j, Restatement of Trusts, page 488, as follows: 'The extent of the discretion conferred upon the trustees depends primarily upon the manifestation of intention of the settlor. ... The mere fact that the trustee is given discretion does not authorize him to act beyond the bounds of a reasonable judgment.' Even though it is provided that the trustees shall have absolute or unlimited or uncontrolled discretion, the court may interpose if the trustee does not act 'in a state of mind in which it was contemplated by the settlor that he would act.' (Comment j, p. 489.)" (See also Estate of Lachmann, 156 Cal.App.2d 674, 680 [320 P.2d 186]; Estate of Greenleaf, 101 Cal.App.2d 658, 662 [225 P.2d 945].)
 In 2 Scott on Trusts (2d ed.) The Administration of the Trust, section 187.1, pages 1374-1376, thus deals with the subject: "To the extent to which the trustee has discretion, the court will not control his exercise of it as long as he does not exceed the limits of the discretion conferred upon him. The court will not substitute its own judgment for his. Even where the trustee has discretion, however, the court will not permit him to abuse the discretion. This ordinarily means *908 that so long as he acts not only in good faith and from proper motives, but also within the bounds of a reasonable judgment, the court will not interfere; but the court will interfere when he acts outside the bounds of a reasonable judgment. In other words, although there is a field, often a wide field, within which the trustee may determine whether to act or not and when and how to act, yet beyond that field the court will control him. How wide that field is depends upon the terms of the trust, the nature of the power, and all the circumstances."
 "In determining whether the trustee is acting within the bounds of a reasonable judgment the following circumstances may be relevant; (1) the extent of discretion intended to be conferred upon the trustee by the terms of the trust; (2) the existence or nonexistence, the definiteness or indefiniteness, of an external standard by which the reasonableness of the trustee's conduct can be judged; (3) the circumstances surrounding the exercise of the power; (4) the motives of the trustee in exercising or refraining from exercising the power; (5) the existence or nonexistence of an interest in the trustee conflicting with that of the beneficiaries."
 "In determining whether the trustee in exercising or refraining from exercising a power is abusing the discretion conferred upon him, much depends of course upon the extent of the discretion intended by the settlor to be conferred upon him. There is no fixed standard by which it can be determined whether the trustee is abusing his discretion. The extent of the discretion may be enlarged by the use of qualifying adjectives or phrases such as 'absolute' or 'uncontrolled.' Even the use of such terms, however, does not give him unlimited discretion. A good deal depends upon whether there is any standard by which the trustee's conduct can be judged. Thus if he is directed to pay as much of the income and principal as is necessary for the support of a beneficiary, he can be compelled to pay at least the minimum amount which in the opinion of a reasonable man would be necessary. If, on the other hand, he is to pay a part of the principal to a beneficiary entitled to the income, if in his discretion he should deem it wise, the trustee's decision would normally be final, although as will be seen the court will control his action where he acts in bad faith. The real question is whether it appears that the trustee is acting in that state of mind in which it was contemplated by the settlor that he should act."
 [20a] The intention of the settlor as shown by the document creating the trust is the most important single element *909 in the determination of the rights of the trustee. (Title Ins. & Trust Co. v. Duffill, 191 Cal. 629, 642 [218 P. 214]; Moxley v. Title Ins. & Trust Co., 27 Cal.2d 457, 463 [165 P.2d 15, 163 A.L.R. 838]; Ephraim v. Metropolitan Trust Co. 28 Cal.2d 824, 834 [172 P.2d 501]; Estate of Thompson, 50 Cal.2d 613, 617 [328 P.2d 1]; Estate of Karkeet, 56 Cal.2d 277, 281 [14 Cal.Rptr. 664, 363 P.2d 896]; Estate of Heard, 107 Cal.App.2d 225 [236 P.2d 810, 27 A.L.R.2d 1313]; Horne v. Title Ins. & Trust Co., 79 F.Supp. 91, 94-95; Estate of Gross, 216 Cal.App.2d 563, 566 [31 Cal.Rptr. 281].)
 [21] It is unthinkable that Mrs. Miller could have wished to deprive her daughter completely of continued support and maintenance at the unbridled whim of the person named as trustee. He owed and presently owes a duty to make allowances for her support and maintenance within the general boundaries of what Mrs. Hartman and her family were accustomed to as a standard of living. For a trustee to say, "I will give her nothing" or "next to nothing" is to say, "I am not performing my duty." [20b] The discretion granted a trustee, in no matter what broad language, can never be employed to cancel the intention of the settlor or defeat the purpose of the trust. (See: Bogert, Trusts and Trustees, 560, pp. 118-126.) For example, if a trust were created for the purpose of feeding the pet animals of a decedent, the trustee, even though granted sole or unlimited discretion as to what should be fed, could not starve the animals to death; he would have to feed them if he were true to his trust; he might use his discretion to use fish, flesh, or fowl as the feeding medium, but he could not use his discretion to defeat the trust.
 [22] It is obvious from the will itself, which this court has the right to construe independently of the trial court (Estate of Platt, 21 Cal.2d 343, 352 [131 P.2d 825]; Meyer v. State Board of Equalization, 42 Cal.2d 376, 381 [267 P.2d 257]; Estate of Gross, supra, 216 Cal.App.2d 563, 566), that the primary purpose of Mrs. Miller was to make her three daughters beneficiaries of the property which she and Dr. Miller had accumulated. She gave one-third of such property to each of two daughters and, because of Mrs. Hartman's temporary and unfortunate addiction to liquor, she gave title of the other one-third to the trustee with directions to use the income, and if necessary the corpus, to keep and maintain Mrs. Hartman in the circumstances to which she was accustomed. It is unthinkable that Mrs. Miller would contemplate that the trustee would fail to carry out his duty as required *910 by the trust. The trustee as such has long held cash assets from the estate of Mrs. Miller; and up to the time of the hearing of the petition he had paid Mrs. Hartman only $150. This total, considered alone, was not sufficient to keep her alive, let alone to maintain her in the condition and situation to which she was accustomed.
 We have here a case of the trustee completely failing to exercise his judgment in the performance of his duties. In Restatement Second of Trusts, Administration of Trust, section 187, at page 405, it is said:
 "h. Trustee's failure to use his judgment. The court will control the trustee in the exercise of a power where its exercise is left to the judgment of the trustee and he fails to use his judgment. Thus, if the trustee without knowledge of or inquiry into the relevant circumstances and merely as a result of his arbitrary decision or whim exercises or fails to exercise a power, the court will interpose. ..."
 "* * *"
 "* * *"
 "So also the court will interpose where the trustee fails to use his judgment because of a mistaken view as to the extent of his powers or duties, whether the mistake is one of law or fact."
 In the opinion in Estate of Landau, 158 Cal.App.2d 176, at p. 180 [322 P.2d 222], the court points out that the general rule giving a trustee sole or absolute discretion does not apply where a trustee has not exercised any discretion at all.
 Scott on Trusts (2d ed.) volume 2, The Administration of the Trust, section 187.3, pages 1389-1390, says: "Where by the terms of the trust a discretionary power is conferred upon the trustee and the exercise of the power is left to his judgment, the court will interpose if the trustee fails to use his judgment. ... Where he does not use his judgment, he has not acted in the state of mind in which it was contemplated by the settlor that he should act. Thus if the trustee is authorized in his judgment to make certain payments to a beneficiary in the discretion of the trustee, and instead of exercising any judgment in the matter he arbitrarily declines to make any payment, the court may interpose. It is clear that the trustee is not properly exercising the discretion conferred upon him if he decides the matter by tossing a coin, or if he delegates the decision to a third person. So also his conduct is arbitrary and the court may interpose where he is authorized to make payments to a beneficiary if in his judgment he deems it wise *911 and he refuses to inquire into the circumstances of the beneficiary."
 Mrs. Hartman's testimony is essentially uncontradicted. She stated under oath that she was engaged in the practice of her profession as a physician until 1959 or 1960, that the onset of the liquor habit characterized by her as a disease, occurred at about that time and that it was dominant at the time her mother made her will; since then she has been completely cured; she never imbibes alcohol. Her husband died in May of 1959. The Board of Medical Examiners has completely reinstated her right to practice medicine, including her specialty, ophthalmology. She has no property of her own except a small amount of furniture in storage and she has only present earnings as a clerk-typist. She owes attorneys' fees due to her representation before the Board of Medical Examiners and the taxing authorities of the federal government in the sum of $7,642.18. She owes an income tax to the United States said to be $899.19, besides interest, and $128.04 as state income tax. She owes the sum of $550 to N. Gray & Co. for the balance on the funeral bill of her husband and some $2,000 in other debts which represent money which she had to borrow in order to live.
 She estimates that items of her present living costs would be $200 for rent, $150 for food, and these additional monthly bills: telephone--$10, laundry and cleaning--$50, clothes--$125, besides taxes, insurance, casual entertainment, possible medical bills, and miscellaneous. During this time, she has worked for one month for $300, and, thereafter, for a time she was employed at $2.00 per hour. She was working at the time of the hearing for a net sum of $279 per month, as a clerk-typist. It will be noted that she has been receiving no remuneration from patients by reason of her medical qualifications; she has recently worked in the Presbyterian Hospital clinic for no pay. In order to reinstate herself as a doctor she would have to purchase optical equipment which would cost $8,099.52 plus tax. Besides, she would be required to purchase malpractice insurance in the amount of $450, to pay medical society assessments in the sum of $250, and other insurance in the sum of $100; and she testified that she would probably have to pay each month around $200 for office rent, $15 for telephone plus an answering service, $20 or $25 for laundry, $300 wages for a nurse, $30 for drugs, $50 for instruments, $5 for stationery, $15 for stamps, and $50 for miscellaneous items. *912
 In view of the record in this case, there can be no question but that the trustee for a long period of time has had the pressing duty to make payments to maintain and support Mrs. Hartman and that he has failed to do his duty. In 49 California Jurisprudence 2d, Trusts, section 308, page 149, it is said: "On proof of necessity, the court will compel the trustee to make the payment and will usually direct the amount to be paid."
 In Estate of Lachmann, supra, 156 Cal.App.2d 674, 681, the following quotation is made with approval from Coker v. Coker, 208 Ala. 354 [94 So. 566]: " 'Testator, very clearly, intended that his widow should have ample, suitable, and proper maintenance. The discretion left the trustee was a reasonable discretion, whereas it appears that the trustee has administered the trust wholly without regard to the claims of the designated beneficiary, or rather perhaps it would be more correct to say that he has exercised no discretion whatever. Appellee's ward is maintained at the expense of the state of Florida in one of its charitable institutions. The necessary inference from the evidence is that not one penny of the large estate left by testator has been devoted to her care or comfort."
 "These facts disclose a total perversion of the trust; a complete abandonment of the purposes for which it was created; and in such case the court will provide for the administration of the trust under its own orders, will ascertain the amount necessary to an ample, suitable, and proper maintenance ... according to the true intent of the trust. ...' "
 In Bogert, Trusts and Trustees (2d ed.) section 811, pages 201-203, it is said in discussing the duty of a trustee to furnish support and maintenance to a cestui: "In such a trust the settlor may reasonably be held to have intended to provide for the maintenance of the cestui in the social and economic position in which the latter had been living at the time of the creation of the trust, and to give him the comforts and necessities to which he had been accustomed, and not merely to provide the cestui with the bare necessities of life. A trustee has been held entitled to include under the term 'support' the education of the cestui, the maintenance of his family, the purchasing of life insurance to the cestui's life to secure the cestui's creditors, a vacation, nursing and medical care, and the payment of debts."
 In the instant case, there is a provision as we have seen that "In the event the net income of the trust is not sufficient to provide for the support and maintenance of my said daughter including all necessary medical care and nursing she may require, *913 my Trustee shall distribute to her or on her behalf out of the corpus of the trust such sums as the Trustee may determine to be necessary to argument [sic] [augment] the income to provide for such support and maintenance and medical care."
 Estate of Greenleaf, supra, 101 Cal.App.2d 658, 662-663, quotes with approval the following statement of principle from 2 American Law Reports 2d 1395: " 'Where the trust provision directs the trustee to disburse portions of the principal for a given purpose, the trustee's authority to pay is not discretionary but is merely conditional upon the existence of a reasonable necessity for the disbursement to accomplish the purpose. Upon proof of such a necessity, a court will compel the trustee to make the disbursement, and usually will direct him as to the amount to be paid. The question of necessity, as well as what it calls for to comply with the condition, is a judicial question.' "
 The duty of the trustee appears to be clear and the court should make its specific directive order accordingly. In the event the income is not sufficient to meet the requirements of paragraph Fourth (1), the trustee should resort to the corpus for the purpose of carrying out the intention of the testatrix.
 The order relative to the trust must be reversed with directions to the trial judge to make additional findings of fact and conclusions of law from the evidence in this case and a new order based thereon incorporating the following:
 1) The court determines from the evidence that the trustee has inexcusably failed to exercise the discretion required of him, and that it is incumbent upon the court, accordingly, to make the following specific directive orders;
 2) That the intention of Mrs. Miller in creating the trust was to provide support and maintenance for Mrs. Hartman during her lifetime by the use of the net income from the trust property distributed to the trustee and, if that should be insufficient, by the invasion of the corpus of the trust property, in an amount which, when added to any other income which she might have, should be sufficient for her adequate and proper support and maintenance from and after the date of the death of Mrs. Miller;
 3) That the intention of Mrs. Miller with respect to the standard of support and maintenance of Mrs. Hartman was that she should live in the same manner and style as the Miller family and the Hartman family had lived prior to the death of Mrs. Miller;
 4) That such standard of support and maintenance when *914 applied to the uncontradicted facts established by the record should include the payment of any debts of Mrs. Hartman for taxes due to the United States and to the State of California, all attorney's fees and costs incurred for the purpose of ascertaining such tax debts and for restoring Mrs. Hartman to the right to practice her profession as a physician in the State of California; the N. Gray & Co. balance; and the equipment of Mrs. Hartman with the usual mechanical and scientific precision instruments used by ophthalmologists in the practice of their profession;
 5) That the trustee forthwith determine the amount of the net income now held in the trust which has been accumulated from the corpus of the property in the trust since the death of Mrs. Miller and shall pay forthwith to Mrs. Hartman the following sums:
 A) A sum sufficient to total the monies which would have been required for the support and maintenance of Mrs. Hartman in accordance with said standard from the death of Mrs. Miller to and including the date of hearing of the petition of Mrs. Hartman, to wit: the 19th day of July, 1963;
 B) The payment of the debts of Mrs. Hartman as shown by the evidence, to wit: 1) the balance due N. Gray & Co. for the funeral of Mrs. Hartman's deceased husband; 2) the monies necessary to pay the attorney's fees as shown by the evidence; 3) the monies sufficient to pay any outstanding tax due to the United States of America and to the State of California;
 C) A sum sufficient to purchase the usual mechanical and scientific instruments used by ophthalmologists in the practice of their profession;
 6) The trustee shall forthwith ascertain the net income from the trust property from the said 19th day of July, 1963, for a period of one year thereafter, and shall forthwith pay to Mrs. Hartman whatever sums, when added to any income from other sources received by Mrs. Hartman during that time, would equal proper support and maintenance in accordance with said standard during that time;
 7) That the trustee shall forthwith estimate the probable income from said trust property for the period beginning July 19, 1964, and ending one year thereafter, and shall pay to Mrs. Hartman monthly such sums as, when added to her other income, if any, will equal her support and maintenance according to the standard mentioned above;
 8) That during the life of Mrs. Hartman the trustee shall continue to make such calculations at least annually and shall *915 promptly thereafter make such monthly payments to Mrs. Hartman;
 9) That the support and maintenance of Mrs. Hartman during prospective payments shall include monies sufficient to permit her to operate an office for the practice of her profession as an ophthalmologist;
 10) In making the payments in accordance with this order, the trustee shall credit himself with any payments which he has made to Mrs. Hartman previously;
 11) If at any time the net income from the property in the trust shall not be sufficient to make the payments provided for by paragraphs 1 to 9 as heretofore set forth, the trustee shall invade the corpus of the trust property for the purpose of making or completing such payments.
 It is ordered that the appeals of Charles Davison Field be, and they hereby are, denied; that the final decree of distribution in the estate be, and it hereby is, affirmed, with the addition of the explanatory provision relative to the participation in the San Mateo case by the executor hereinbefore set forth.
 The order relative to the trust is reversed with directions to the trial judge to make findings of fact and conclusions of law and an order based thereon in accordance with the foregoing opinion. Appellant shall recover her costs.
 Brown (R. M.), J., concurred.
 Stone, J., deeming himself disqualified, did not participate.