[No. C048171. Third Dist. July 6, 2006.]

KAREN THOMAS, as Guardian, etc., Plaintiff and Appellant, v.
ROBERT A. GUSTAFSON, as Trustee, etc., Defendant and Respondent.

## COUNSEL

Law Office of Stephanie J. Finelli and Stephanie J. Finelli for Plaintiff and Appellant.

Marshall, Burghardt, Mieske & Harp and Ernest S. Mieske for Defendant and Respondent.

## OPINION

**NICHOLSON, Acting P. J.**—Devereaux and Marie Lynch, husband and wife, created the Lynch Family Living Trust.[1] When Devereaux died, leaving Marie as a surviving spouse, the trust, by its terms, became a survivor's trust and a residual trust. The survivor's trust was composed of Marie's separate property and her share of community property. The residual trust was composed of Devereaux's separate property and his share of the community property. Upon Marie's death, what is left in the survivor's trust (which, as will be explained, will most likely be nothing as it is currently entirely or mostly depleted) will go to Marie's daughter from a prior marriage, Karen Thomas (who is also the trustee of the survivor's trust, Marie's guardian ad litem, and the plaintiff in this case). What is left in the residual trust will go to Devereaux's nieces and nephews (he had no children). While she lives, however, Marie is entitled to support from the *income* of the survivor's trust and the residual trust. The trust document provided that, if the income of the two trusts is insufficient for Marie's support, the principal of, first, the

---

[1] To avoid confusion, we will use the related parties' first names.

survivor's trust and, second, the residual trust would be used for her support. The focus of this appeal is on whether Marie is entitled to support from the *principal* of the residual trust.

Karen petitioned for an order requiring Robert A. Gustafson, the current trustee of the residual trust, to pay for Marie's support out of the principal of the residual trust. She also sought attorney fees, as well as other relief not relevant to this appeal.

After a court trial, the court concluded that Marie is not entitled to support from the principal of the residual trust because she has other assets (namely, a duplex where she no longer resides) available for her support. Additionally, the court found that Karen used the principal of the survivor's trust to purchase and renovate the duplex. Specifically, the court concluded Gustafson did not abuse his discretion in denying Marie's request for support from the principal of the residual trust. As for Gustafson's fees and costs associated with this proceeding, the court ordered those paid, half and half, from the income and principal of the residual trust. Finally, the trial court denied Karen's request for an award of attorney fees. Karen appeals.

We conclude the trial court properly determined Marie's assets can be considered in determining whether the principal of the residual trust should be invaded for Marie's support. It is not necessary to invade the principal while Marie has other assets from which she can support herself. We also conclude the trial court erred in dividing Gustafson's fees and costs between the income and principal of the residual trust. Since this litigation primarily concerns the principal of the residual trust, the fees and costs must be paid from that principal. Finally, we find no abuse of discretion in the trial court's denial of Karen's request for attorney fees.

## FACTS

Marie and Devereaux married in 1986. Karen is Marie's only child. Devereaux had no children, but he had several nieces and nephews from his own siblings and from his prior marriage of 45 years. In 1991, Marie and Devereaux created the Lynch Family Living Trust. They amended it in 1992. The trust provided that upon the death of the first spouse, the trust would split into two trusts: the survivor's trust and the residual trust. The survivor's trust was to consist of the survivor's separate assets and his or her share of community property. The survivor was to be supported first by the income from both trusts, then from the assets of the survivor's trust, and finally, from the assets of the residual trust.

The 1992 amendment to the trust provided, in part, that if Marie survived Devereaux, then on Marie's death, the residual trust would be distributed among various beneficiaries, including Devereaux's nieces and nephews, but not Karen or Karen's heirs. The trial court found that Devereaux wanted to leave his assets to his nieces and nephews, and Marie wanted to leave her assets to Karen.

On August 25, 2000, Karen took Marie to a doctor who opined in writing that due to Marie's dementia, she was unable to make decisions regarding health care or finances. Devereaux died on September 19, 2000. One of his separate property assets was a house in Paradise, California, where he and Marie had been living. Shortly after Devereaux's death, the original trustee of the residual trust sold the house in Paradise. The proceeds from the sale were added to the residual trust, bringing its value to approximately $240,000. The survivor's trust was valued at approximately $114,000. On November 13, 2000, Marie resigned as trustee of the survivor's trust and Karen became the trustee.

Within a year of obtaining the doctor's letter stating Marie was incompetent to manage her finances, Karen, acting as trustee of the survivor's trust, depleted all of the money in the survivor's trust. She bought a duplex in Oakland for $200,000 and renovated it for approximately $100,000. Karen recorded the duplex in her name and Marie's, as joint tenants. Karen testified she spent $105,000 of the trust's $114,000 on the duplex. She spent the remaining funds in the survivor's trust on her mother's needs. On cross-examination, Karen was asked about checks totaling over $10,000. The checks, signed by Karen, were drawn from funds in the survivor's trust, payable to Karen. She could not trace any of them back to particular expenses or renovations. The trial court found that Karen used a substantial portion of the survivor's trust funds for the purchase and renovation of the duplex, and the survivor's trust was entirely or almost entirely depleted.

Karen testified the value of the duplex was $400,000. At the time of trial, Karen was living in the duplex. Marie had lived in the duplex for one year, but then Karen permanently relocated her to a care facility. Marie had living expenses of $3,654 per month. She had income from Social Security of $1,294 per month. Her monthly shortfall was $2,360 per month, or $28,320 per year.

After exhausting the survivor's trust, Karen asked Gustafson to invade the principal of the residual trust to cover Marie's living expenses. He declined to invade the principal. He decided that the principal of the residual trust should not be invaded for Marie's support because the principal of the survivor's trust had simply been transferred out or "gifted" away but was still available for Marie's support.

The trial court found that the trust language gave Gustafson discretion to determine (1) whether the income from the survivor's trust and the residual trust is sufficient to provide for Marie's needs or (2) whether it is necessary for Marie's maintenance to invade the principal of the residual trust. The court considered Marie's assets relevant to the income she requires for her support. Specifically, if Marie owns a house that she cannot use as her own residence, that house could be sold to provide for her support. The court found that Gustafson did not abuse his discretion in refusing to invade the residual trust for Marie's support.

The court ordered half of Gustafson's attorney fees and a Kinko's bill of $630.08 to be paid from the income of the residual trust and the other half from the principal of the residual trust. The Kinko's bill was an expense for photocopying the file of a prior attorney for the residual trust. The court denied Karen's request that a portion of her attorney fees be paid from the residual trust.

## DISCUSSION

### I

#### *Provision for Invasion of Principal*

Karen contends that, under the plain language of the trust documents, once the survivor's trust was depleted, Marie was entitled to invade the principal of the residual trust for her support. We disagree.

Article V, paragraph B, of the Lynch Family Living Trust provides: "If the Trustee considers such income [from the survivor's and residual trusts] insufficient, the Trustee shall also pay to or apply for the benefit of the Surviving Spouse such sums out of the principal of the trusts as are necessary for the Surviving Spouse's proper health, support and maintenance, such payments to be made first from the Survivor's Trust until it is exhausted, and thereafter from the Residual Trust . . . ."

Karen argues that paragraph B does not give the trustee of the residual trust discretion concerning invasion of principal. "The trustee is required," argues Karen, "to invade the principal of the Residual Trust upon a finding that the income from the Residual Trust and the Survivor's Trust is insufficient to provide for Marie's proper health, support and maintenance, once the survivor['s] trust is exhausted." (See *Estate of Miller* (1964) 230 Cal.App.2d 888, 908–909 [41 Cal.Rptr. 410] [extent of trustee's discretion defined by settlor's intention].) Assuming for the purpose of argument that Karen is correct and paragraph B did not grant the trustee any discretion to refuse to invade the

principal if the income of the trusts and the principal of the survivor's trust are insufficient for Marie's support, her argument still fails. Invading the principal of the residual trust is not, in the trust's language, "necessary for [Marie's] proper health, support and maintenance," when Marie's interest in the duplex is considered.

■ " 'Where the trust provision directs the trustee to disburse portions of the principal for a given purpose, the trustee's authority to pay is not discretionary, but is merely conditional upon the existence of a reasonable necessity for the disbursement to accomplish the purpose. Upon proof of such a necessity, a court will compel the trustee to make the disbursement, and usually will direct him as to the amount to be paid. The question of necessity, as well as what it calls for to comply with the condition, is a judicial question.' [Citations.]" (*Estate of Greenleaf* (1951) 101 Cal.App.2d 658, 662–663 [225 P.2d 945].)

■ On review of the trial court's interpretation of a trust instrument, the appellate court's proper function is to give effect to the intention of the settlor of the trust. (*Wells Fargo Bank v. Marshall* (1993) 20 Cal.App.4th 447, 453 [24 Cal.Rptr.2d 507].) Devereaux, as cosettlor of the trust, had two purposes in mind: one was Marie's support and the other was to make a gift to his nieces and nephews.

Based on the express terms of the trust, Devereaux intended to provide for Marie for life, as necessary. Specifically, he wanted to ensure Marie had a proper place to live. Article XI, paragraph D, explained Devereaux's intent: "In the event any interest in the property that Settlors are using as a principal residence at the time of the death of the Deceased Spouse becomes subject to the provision of any trust created under this instrument, the Trustees shall permit the Surviving Spouse to occupy that residence without obligation to pay rent. . . . If the residence is sold, the Trustees are authorized to purchase a substitute residence for the benefit of the Surviving Spouse if the Trustees in the Trustees' discretion deem such purchase necessary or appropriate considering the circumstances then existing."

Because the house in Paradise (the couple's residence before Devereaux died) was sold and the funds deposited in the residual trust, the trustees were authorized to purchase a substitute residence for Marie if, in their discretion, it was necessary or appropriate. Karen argues that this provision justified her use of funds in the survivor's trust to purchase the duplex. There are two problems with this reasoning. First, Karen effectively made a gift of the funds from the survivor's trust to herself and Marie by using the funds from the

trust to buy a residence that did not become property of the trust. And second, although the duplex functioned, for a time, as Marie's residence, it cannot be said that it was a substitute residence under the terms of the trust because the purchase required the approval of both trustees, and Karen purchased the duplex simply because *she* felt it was necessary and appropriate to do so. Paragraph D contemplates that the trustees together would buy, and own, the substitute residence. Instead, Karen and Marie took title individually, as joint tenants.

Presently, the duplex is not a substitute residence for the house in Paradise. Marie does not live there; Karen does. Although Karen testified that Marie visits on weekends and Marie's dog lives at the duplex, it is not Marie's residence. Marie's permanent residence is now at the care facility.

It was appropriate for the court to look at the value of the Oakland duplex in determining the necessity of invading the principal of the residual trust. (*Estate of Miller, supra,* 230 Cal.App.2d at pp. 912–913.) " 'On proof of necessity, the court will compel the trustee to make the payment and will usually direct the amount to be paid.' " (*Id.* at p. 912.) In *Estate of Miller,* the court not only examined the beneficiary's debts and expenses, but also looked at her current assets, noting she had insufficient assets to provide for herself. (*Id.* at pp. 910–912.) In other words, the court looked at assets outside of the trust in determining the reasonable necessity of compelling the trustee to make payments from principal to the life beneficiary. A trustee should consider a beneficiary's other resources before making a distribution of principal, unless the trust instrument itself shows another intent. (*Estate of Ferrall* (1953) 41 Cal.2d 166, 176–177 [258 P.2d 1009].) Nothing in the Lynch Family Living Trust prevents the consideration of outside resources in determining whether it is necessary to invade the principal of the residual trust. Because Marie has assets, namely her interest in the duplex, which was bought and renovated with funds from the survivor's trust, it is not necessary for her support to invade the principal of the residual trust.

Any other interpretation of the Lynch Family Living Trust would be contrary to Devereaux's intent as a settlor of the trust. He intended to provide for Marie during her life, as necessary, but he also intended to give to his nieces and nephews. If the trustee of the survivor's trust could so easily demand the principal of the residual trust for Marie's support, simply by moving the assets out of the survivor's trust, Devereaux's design would be thwarted, because funds originally from the survivor's trust, though "gifted" away, remain available for Marie's support.

There is ample evidence that Devereaux intended to benefit his nieces and nephews, as it was a consistent part of his estate plan. Prior to establishing

the Lynch Family Living Trust, Devereaux had a will naming his nieces and nephews as beneficiaries. He and cosettlor Marie kept their property separate. The court found that Devereaux wanted to leave his assets to his nieces and nephews, and not Karen. If Karen or Marie is allowed to exhaust the survivor's trust to maintain a joint tenancy real estate investment, the effect will be to defeat Devereaux's intention to provide for his chosen remaindermen, and instead benefit Karen, whom he did not intend to benefit at all.

Karen relies heavily on *Estate of Patten* (1963) 217 Cal.App.2d 167 [31 Cal.Rptr. 767], for the policy that the court should not force Marie to sell the Oakland duplex. In *Estate of Patten*, like this case, the settlor created a trust naming his wife as the life beneficiary and his daughter from a previous marriage as the remainderman. The trust provided that if the income to the wife was insufficient to defray expenses incurred by illness, accident, or other dire need, the trustee was to invade the principal as the trustee deemed necessary. The wife incurred significant medical expenses and requested that the trustee reimburse her from the principal of the trust estate. The trustee refused because the wife had a home that she had not sold or rented, and she was living at a women's athletic club. (*Id.* at p. 169.)

In finding that the trustee's refusal to invade the principal was an abuse of discretion, the court made several observations that distinguish *Patten* from this case. In *Patten*, the home was the principal source of recreation for the wife, who visited the premises three or four times a week. The home contained valuable antiques and artifacts that could not easily be moved and stored without incurring great and unwarranted expense. The home needed considerable and expensive repair before it could be rented or leased. The home was located in an area of rapidly increasing values, and a sale would be unwise. The wife's move to the Women's Athletic Club was temporary and she wished to return to her home. (*Estate of Patten, supra*, 217 Cal.App.2d at pp. 169–170.) The policy concerns presented in *Patten* are not present in this case. Marie's stay in the care facility is permanent, and there is no evidence suggesting that the sale of the duplex would be unwise.

Thus, payments to Marie from the principal of the residual trust are not "necessary" for her support, health, or maintenance because she has outside resources worth as much as $400,000. This conclusion is consistent with the settlors' intent, as shown by the language of the Lynch Family Living Trust, because not only does Marie presently have sufficient assets to cover her housing and living expenses, the principal of the residual trust will remain intact for the remaindermen and not be unnecessarily depleted.

## II

### *Allocation of Gustafson's Attorney Fees and Costs*

The trial court ruled that Gustafson's attorney fees and costs for this action should be paid half from the income and half from the principal of the residual trust. Because this action concerns primarily the principal of the residual trust, the court should have ruled that Gustafson's fees and costs be paid from the principal, solely, of the residual trust.

Probate Code section 16371[2] provides: "(a) A trustee shall make the following disbursements from principal: [¶] . . . [¶] (4) Expenses of a proceeding that concerns primarily principal, including a proceeding to construe the trust or to protect the trust or its property." The four issues Gustafson presented for trial were: (1) whether the principal of the survivor's trust had been exhausted for Marie's proper health, support, and maintenance, (2) whether the assets available to Marie outside of the trust should be considered in determining whether to invade the principal of the residual trust, (3) whether the trustee had discretion concerning distribution of the residual trust principal, and (4) whether it was the intent of the settlor that the trustee of the residual trust distribute the principal in the circumstances of this case. Thus, the proceedings concerned primarily principal, and section 16371 directed the trustee to make the disbursements for costs and fees from the principal.

Gustafson argues that the split allocation between income and principal was proper pursuant to section 16370. That section provides: "A trustee shall make the following disbursements from income . . . [¶] . . . [¶] (b) Except as otherwise ordered by the court, one-half of all expenses for accountings, judicial proceedings, or other matters that involve both the income and remainder interests." (*Ibid.*)

Even if the action involved, to some extent, the income of the trusts, the proceedings *primarily* concerned principal, thus, implicating section 16371, subdivision (a)(4). While section 16370, subdivision (b), gives the court discretion to "otherwise order[]" an allocation of fees, section 16371, subdivision (a)(4), does not. In other words, when an action primarily concerns the principal of the trust, the court has no discretion to deviate from allocating the costs and fees to principal, even if the court has discretion concerning how to allocate costs and fees when the action does not primarily concern the principal. Accordingly, the trustee was required to make costs and

---

[2] All statutory references are to the Probate Code unless otherwise specified.

fees disbursements from the principal because the proceedings primarily concerned the principal and the court did not have the discretion to "otherwise order."

## III

### Denial of Karen's Request for Attorney Fees

■ Karen argues the trial court erred in denying her request that a portion of her attorney fees be paid from the residual trust. An award of litigation expenses rests in the sound discretion of the trial court. (*Whittlesey v. Aiello* (2002) 104 Cal.App.4th 1221, 1230 [128 Cal.Rptr.2d 742].) Finding no abuse of discretion, we affirm.

■ " 'The underlying principle which guides the court in allowing costs and attorneys' fees incidental to litigation out of a trust estate is that such litigation is a benefit and a service to the trust.' [Citation.] Consequently, where the trust is not benefited by litigation, or did not stand to be benefited if the trustee had succeeded, there is no basis for the recovery of expenses out of the trust assets." (*Whittlesey v. Aiello, supra*, 104 Cal.App.4th at p. 1230.) There is no basis for recovery of attorney fees in this case because the residual trust was not benefited by the litigation, and did not stand to be benefited had Karen's petition been successful. An order to invade the principal of the residual trust for Marie's support would have been contrary to Devereaux's intent by taking money away from the remaindermen, when it was not necessary for Marie's proper health, support, and maintenance.

In an earlier proceeding, Karen successfully petitioned for the removal of the original trustee of the residual trust. That matter was resolved in May 2002. The trial from which Karen appeals in this proceeding took place in June 2003. Karen argues that to require Marie to pay her own attorney fees to vindicate her position as an income beneficiary and to oust the original trustee would be contrary to Devereaux's intent of providing Marie with the income from the trust. (See *Wells Fargo Bank v. Marshall, supra*, 20 Cal.App.4th at p. 458.) The significant issue in the judgment appealed from, however, was whether, taking into account Marie's other resources, the current trustee appropriately refused to invade the principal for Marie's support. As discussed above, the trust was not benefited by the litigation, so there is no basis for the recovery of expenses out of the residual trust assets. Thus, the trial court did not abuse its discretion in denying Marie's request that a portion of her attorney fees be paid from the residual trust.

## DISPOSITION

The judgment is modified to provide that Gustafson's costs and fees arising from this litigation be paid from the principal of the residual trust. As modified, the judgment is affirmed. The parties shall bear their own costs on appeal. (Cal. Rules of Court, rule 27(a).)

Robie, J., and Butz, J., concurred.